Opinion
RICHMAN, Acting P. J.
—Representing himself, appellant Donald T. Grappo filed a complaint purporting to allege 10 causes of action. Seven of the causes of action were set forth in one paragraph, the other three ranging from two paragraphs to five—a complaint, we note, that as framed could not have withstood a demurrer. Grappo had the complaint served on Kenneth McKean, a man named in the caption but not identified in the complaint— and who from all indications had no relationship with Grappo. Six months after such service—and without warning to anyone—Grappo filed a request for default against McKean and his firm (McKean & McMills, LP), seeking a default judgment for $9,982,308.83, with a claimed itemization of damages referring to numbers nowhere found in the complaint. The clerk entered the default on July 1, 2014, but the court refused to enter judgment, entering an order fisting seven specific reasons why.
On November 23, 2014, McKean died, a death of which Grappo was aware. Two weeks later, Grappo filed another request for default and court judgment, a request “not mailed” to anyone because McKean was “now deceased.” This request sought a judgment in the amount of $12,012,818.88, once again with numbers found nowhere in the complaint. This time, however, Grappo filled in the declaration portion in the request referring to “$60,000,” an amount in the prayer for the claimed value of personal property referred to in the eighth cause of action “belonging to some of the heirs of the Michael A. Grappo 2003 Trust.” Apparently based on that, the court entered judgment for Grappo and against McKean and McKean & McMills, LP, for $60,000 plus costs of $750.
*1000 Respondent Aubrey Cambra, the trustee of McKean’s trust, learned of the default judgment when a creditor’s claim was made in McKean’s estate, and filed a motion to vacate and set aside the default judgment. Grappo, now represented by counsel, opposed the motion asserting, however falsely, that at “the time of the entry of judgment [Grappo] was unaware” McKean had died. The trustee filed a reply, and the matter came on for hearing before the same trial court which had entered the judgment. Following a lengthy hearing, the trial court entered a comprehensive order vacating the judgment as to McKean.
Grappo appeals from that order, an appeal we reject as the trial court was right. And we publish the opinion, to remind trial courts that however burdened they be, they must vigilantly attend to their duty in connection with the default process, “ ‘to act as gatekeeper, ensuring that only the appropriate claims get through.’ ” (Fasuyi v. Pennatex, Inc. (2008) 167 Cal.App.4th 681, 691 [84 Cal.Rptr.3d 351] (Fasuyi); Kim v. Westmoore Partners, Inc. (2011) 201 Cal.App.4th 267, 272 [133 Cal.Rptr.3d 774] {Kim).) Grappo’s claim here should not have gotten through, the default judgment never entered in the first place.
THE PROCEEDINGS BELOW
On November 8, 2013, “[s]elf [Represented” Grappo filed a complaint. The complaint names five defendants, two entities and three individuals, not one of which or whom is described or identified. Indeed, Grappo does not even identify himself, or describe any claimed connection or relationship with any of the defendants, his complaint beginning as follows: “COMES NOW the Plaintiff, Donald T. Grappo and says that: on or about April 28, 2009 and continuing through the year 2012, Defendants, and each of them did willfully and with malice aforethought misappropriate funds belonging to the Michael A. Grappo 2003 Trust.”
We digress momentarily from a description of the complaint to note that Grappo cannot be a proper plaintiff as to claims held by a trust. The proper plaintiff is the trustee. (Code Civ. Proc., § 369, subd. (a);[1] O’Flaherty v. Belgum (2004) 115 Cal.App.4th 1044, 1062 [9 Cal.Rptr.3d 286].) In short, the complaint as pled shows that Grappo has no standing. It also shows that no cause of action is properly pled.
The complaint states on the front page that it is for “fraud, breach of fiduciary duty, gross negligence, misappropriation of funds.” However, the complaint itself purports to allege many more causes of action, 10 to be *1001 exact, the first seven of which are each alleged in one paragraph. The complaint refers to only four amounts of money: a claimed abstract of judgment held by another Grappo in the amount of $3,477,259.08 (set forth in the third cause of action), and three small amounts leading to a $1,000 per month claimed overpayment causing the Michael A. Grappo 2003 Trust to lose money. The latter references are in the first paragraph of the eighth cause of action, for “gross negligence and defalcation,” which also includes this second paragraph: “9. Defendant McKean further removed or authorized the removal of items of personal property belonging to some of the heirs of the Michael A. Grappo 2003 Trust without prior notification to said property owners and without ever notifying said property owners of the disposal of these items of personal property which were being stored at the Piedmont property site.”
The prayer of the complaint sought this:
“2. All excessive attorney’s fees returned to the heirs of the Michael A. Grappo 2003 Trust;
“3. All excessive Trustees fees charged the Trust by Trustees returned to the heirs of the Michael A. Grappo 2003 Trust;
“4. Punitive damages for loss of revenue to the trust determined and said amounts be returned to the heirs of the Michael A. Grappo 2003 Trust;
“5. Punitive damages for failed [«'c] to renew Abstract of Judgment in the sum of $3,477,259.08 plus interest thereon;
“6. The sum of $60,000.00 which is the value of property removed from the Piedmont property site and disposed of without notification to the owner of said property.”
On December 30, 2013, McKean was served at his home in Piedmont.
On June 30, 2014, Grappo filed a request for entry of default against McKean and McKean & McMills, LP. Item 2 in the request, “Judgment to be entered,” read as follows:

*1002

(Fn. & boldface omitted.)
Item 6, the declaration of mailing required under section 587, represented that the request was served on two law firms and on “Ken McKean, McKean & McMills[,] LP, 28 Lorita Ave, Piedmont, CA 94611.” Interestingly, one of the law firms, Cooper, White & Cooper, LLP, had on April 18, 2014, substituted in as counsel for Heather McMills, apparently the other principal of McKean & McMills, LP.
On July 1, the clerk entered the default. However, the court entered an order denying the request for default judgment, indicating that it was “NOT ENTERED” for the following reasons, listing seven.
On November 23, McKean died, a death that obviously became known to Grappo. Two weeks later, on December 8, Grappo filed another request for default[2] and court judgment. Item 2 of this request read as follows:

“g. Daily damages were demanded in complaint at the rate of $10% per annum per day beginning (date): 11/08/2000.” (Fn. & boldface omitted.)
In item 6, the declaration of mailing, Grappo checked the box that a copy of the request was “not mailed to the following defendants,” going on to state that “Defendant Ken McKean and Ken McKean as owner of McKean & *1003 McMills, LP, is now deceased and could not be served.” No service was made on McMills, apparently the other “owner” of “McKean & McMills, LP,” who was still alive—indeed, as noted, represented by counsel.
Grappo also filed a five-paragraph declaration in the request, which declaration read in its substantive entirety as follows:
“A complaint was filed in the above entitled matter on November 6, 2013. This Plaintiff affirms that the value of property which was removed without notice from the garage at the Piedmont Avenue property belonging to Declarant Donald T. Grappo is approximately $60,000.00. This Declarant cannot provide receipts for any of said property in that any and all information in connection with said property was also stored at the Piedmont Avenue property and was destroyed along with the property itself.
“I attach a copy of an email sent to me from attorney Brittain Habegger on March 21, 2011 which states in pertinent part ‘. . . It is my understanding that having given you and other family members several years to collect from the garage those things
“At no time was there ever a notification given to me, or to the best of my knowledge, information and belief to any of my family members that Trustee McKean intended to remove and destroy any of my property stored in the Piedmont property garage.”
No prove-up hearing was held. Rather, on December 22, the trial court filed a “Judgment Default” that Grappo recover from defendants Ken McKean and McKean & McMills, LP, $60,000 plus costs of $750.00.
The clerk served notice of entry of judgment on Grappo. No service was made, or apparently even attempted, on McKean & McMills, LP, or McKean or McMills as individuals.
On February 17, 2015, Grappo sent a letter to the trial court that read in its entirety as follows:
“This letter is addressing the $10 Million dollar figure cited in my request for judgment. I thank the court for issuing the $60,750.00 judgment which reimburses me for the items of personal property stored at the Piedmont property. However, Mr. McKean committed so many egregious errors while acting as trustee of my father’s trust, that it boggles the mind. I would appreciate you reviewing my request for judgment and considering issuing me a judgment connected with this missteps [ sic | while trustee of the Michael A. Grappo 2004 Trust at your earliest opportunity.
*1004 “It has come to my attention that Mr. Ken McKean has passed away. He has property valued in the millions and I will have to file a creditor’s claim soon in his estate if I am going to be able to collect some or all of the monies owed to me and my siblings as a result of his misdeeds.
“Thank you for your kind consideration.”
Aubrey Cambra, trustee of the Kenneth A. McKean Trust, learned of the default judgment when Grappo filed a creditor’s claim in McKean’s estate. On November 4, 2015, Cambra filed a motion to vacate the default judgment and enter a different judgment. The motion references section 663; the memorandum of points and authorities refers to section 663 and also to section 473.5.
Grappo, now represented by counsel, filed opposition. Exclusive of exhibits, his substantive opposition was all of three pages, with two arguments: (1) that the motion was untimely and (2) even if timely, it “must be denied on the merits, because there was no prejudice to Defendant McKean or Cambra.”
Cambra filed a reply, and the motion came on for hearing before the same trial court that had entered the default judgment. The court heard extensive argument, lasting almost an hour. Among other things, Grappo’s counsel argued there was no prejudice, that there was “nothing that could have been done” as McKean had defaulted. The court interrupted: “Well, motion to vacate the default.” To which Grappo’s attorney responded, “Right.”
Following the hearing, the trial court entered its order granting the motion, vacating the judgment against McKean. The order was a comprehensive nine paragraphs, the first five of which detailed the procedural history leading to the setting before the court. The next three paragraphs set forth the bases for the court’s ruling, as follows:
“Trustee contends that Plaintiff should have substituted Kenneth McKean’s personal representative in this action and litigated against that personal representative in obtaining a judgment, as required by Code of Civil Procedure section 377.41.
“When a defendant in a pending action dies, the action may be prosecuted against the decedent’s personal representative. Pursuant to Code of Civil Procedure section 377.41, the court shall allow a pending action that does not abate to be continued against the decedent’s personal representative or, to the extent provided by statute, against the decedent’s successor in interest. As a general proposition, judgment cannot be entered for or against a decedent, nor against the personal representative of the decedent’s estate, until the *1005 representative has been made a party by substitution, and a judgment entered against the decedent prior to substitution of a personal representative or successor-in-interest is subject to general attack. (Sacks v. FSR Brokerage, Inc. (1992) 7 Cal.App.4th 950, 956-957 [9 Cal.Rptr.2d 306].) However, the judgment is not void, and it will be set aside only upon a showing of prejudice. (Id. at p. 957.)
“Trustee has made a sufficient showing to vacate the judgment against Defendant Ken McKean. It is undisputed that Plaintiff has filed a creditor’s claim against the McKean Trust in Case No. RP15-765907 based on the Default Judgment in this action, and has filed another civil lawsuit against Trustee in Case No. RG15-779986, also based on the Default Judgment against Defendant Ken McKean. Trustee has established that she was not given notice of the existence of the default or the application for default judgment, and thus had no opportunity to seek relief from the default before Default Judgment was entered against Defendant Ken McKean. The prejudice to the Trust is clear, and Trustee has made a sufficient showing that the judgment against Defendant Ken McKean is void. (Code Civ. Proc., sec. 473(d).)”
Grappo filed a timely appeal from the order.
DISCUSSION
I. The Trial Court Order Was Correct
A. Governing Principles: Defaults and Default Judgments
The law concerning section 473 relief was set forth by the Supreme Court in Elston v. City of Turlock (1985) 38 Cal.3d 227, 233 [211 Cal.Rptr. 416, 695 P.2d 713]: “A motion seeking such relief lies within the sound discretion of the trial court, and the trial court’s decision will not be overturned absent an abuse of discretion. [Citations.] However, the trial court’s discretion is not unlimited and must be ‘ “exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.” ’ [Citations.] [¶] Section 473 is often applied liberally where the party in default moves promptly to seek relief, and the party opposing the motion will not suffer prejudice if relief is granted. [Citations.] In such situations ‘very slight evidence will be required to justify a court in setting aside the default.’ [Citations.] [¶] Moreover, because the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default [citations].” (Accord, Shamblin v. Brattain (1988) 44 Cal.3d 474, 478 [243 *1006 Cal.Rptr. 902, 749 P.2d 339] [“very slight evidence is required to justify a trial court’s order setting aside a default”].)
A ruling setting aside a default or default judgment is reviewed under the abuse of discretion standard, and an appellate court will reverse only upon “ ‘ “a clear case of abuse” ’ ” and “ ‘ “a miscarriage of justice.” ’ ” (Blank v. Kirwan (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58]; see Denham v. Superior Court (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].) In short, as one Court of Appeal recently described it, Grappo has a “ ‘daunting task.’ ” (Dreamweaver Andalusians, LLC v. Prudential Ins. Co. of America (2015) 234 Cal.App.4th 1168, 1171 [184 Cal.Rptr.3d 735].)
B. Governing Principles: Appellate Review
The most fundamental principle of appellate review is that, “A judgment or order of a lower court is presumed to be correct on appeal, and ah intendments and presumptions are indulged in favor of its correctness.” (In re Marriage of Arceneaux (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227]; accord, Ketchum v. Moses (2001) 24 Cal.4th 1122, 1140 [104 Cal.Rptr.2d 377, 17 P.3d 735].) And, of course, we will uphold the decision of the trial court if it is correct on any ground. (Ladas v. California State Auto. Assn. (1993) 19 Cal.App.4th 761, 769 [23 Cal.Rptr.2d 810].)
In light of those principles and presumptions, the burden is on Grappo to demonstrate error—and also “prejudice arising from” that error. (Gould v. Corinthian Colleges, Inc. (2011) 192 Cal.App.4th 1176, 1181 [120 Cal.Rptr.3d 943].) He has done neither.
C. Introduction to the Analysis
Grappo’s opening brief is not a model of appellate advocacy. The brief sets out what occurred below in a fashion favorable to him, the loser, rather than in support of the trial court’s decision, which is bad enough. Worse, both of Grappo’s briefs continue the assertion his counsel made below, that Grappo did not have “knowledge of . . . McKean’s death on December 8, 2014, when the Request to Enter Default Judgment was hied.” As noted, this is flatly false, as shown by Grappo’s “under penalty of perjury” representation that McKean “is now deceased.” Such advocacy is not to be condoned.
The introduction to Grappo’s brief distills his position in the following language: “Appellant Grappo is seeking to have the Order reversed as a matter of law, based on undisputed facts, such that the December 22, 2015 judgment against defendant McKean stands and remains in effect. Alternatively, the lower court Order could be reversed as an abuse of discretion, to *1007 the extent that any court actions were discretionary, given the violation of established legal principals [s/c]. The Order should be reversed and Grappo’s December 22, 2014 judgment against McKean should remain in effect.” By no means.
D. Grappo Has Not Demonstrated Error
Grappo’s first argument is that the motion was late, beyond the time limits allowed by section 663.
To put the issue in context, Cambra’s motion to vacate stated that it was made ‘“pursuant to Code of Civil Procedure § 663 on the ground that the legal basis for the Judgment Default is incorrect and/or erroneous in that it is neither consistent with nor supported by the facts. Mr. McKean was deceased and the entity of which he was a general partner, McKean & McMills, LP, was not in existence at the time the Court entered the Judgment Default on December 22, 2014.”
The essence of this argument was that because McKean was dead, the judgment was void. In support of the argument, Cambra cited many cases holding that, as one Supreme Court case cited by Cambra tersely put it, ‘“A judgment rendered for or against a dead person is void . . .” (Estate of Parsell (1923) 190 Cal. 454, 456 [213 P. 40])—language the Supreme Court first used in 1868, in Judson v. Love (1868) 35 Cal. 463.[3]
Witkin describes this state of affairs this way: “Death During Action. If the defendant was alive when the action was begun and personal jurisdiction over him or her was obtained, the defendant was originally a party. Death occurring thereafter, before judgment, makes it improper to render judgment for or against the defendant without first taking the procedural step of substituting the executor or administrator. The failure to take this step is a departure from the mandatory requirements of the statute, and does result in a judgment for or against a person not a party. Hence, it seems clearly in excess of jurisdiction and subject to prevention or annulment by some form of direct attack. (See Boyd v. Lancaster (1939) 32 [Cal.App.2d] 574, 581 [90 P.2d 317] [reversal on appeal: ‘The defect would appear to us to go to the jurisdiction *1008 to file and enter such an order’]; Estate of Cazaurang (1939) 35 [Cal.App.2d] 556, 558 [96 P.2d 185] [prohibition issued to restrain trial]; Hamilton v. Hamilton (1948) 83 [Cal.App.2d] 771, 774 [189 P.2d 722]; Herring v. Peterson[, supra,] 116 [Cal.App.3d] 608, 611, 612 [trial court acted in excess of jurisdiction in dismissing action on motion of defense counsel, where defendant died and no personal representative was substituted] . . . .)” (2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 317, p. 929.)
Grappo’s opposition did not even mention any of the cases cited in Cambra’s brief talking about “void.” In fact, the only case cited by Cambra referred to in Grappo’s opposition was Sacks v. FSR Brokerage, Inc., supra, 1 Cal.App.4th 950 (Sacks), a case, as quoted above, the trial court referred to in its order.
Sacks arose in the context where the plaintiff Sacks had summary judgment entered against him in favor of all the defendants, including Glen Gaither, who had died. Sacks appealed, contending that it was error to enter judgment in favor of a defendant who had died. Addressing the contenhon, the court observed as follows: “As a general proposition, it is true, as Sacks contends, that under these provisions judgment cannot be rendered for or against a decedent, nor can it be rendered for or against a personal representative of a decedent’s estate, until the representative has been made a party by substitution. [Citations.] A long line of cases has therefore allowed direct attack upon a judgment obtained without substitution of a personal representative after a party has died. [Citations.] In California, the rule can be traced back to the early Supreme Court decision in Juclson v. Love[, supra,] 35 Cal. 463, which observed that the proceedings after the death of the defendant were ‘irregular and void as to him and his successors in interest. . . .’ (Id. at p. 467.) However, this general proposition has not been applied blindly, but rather has acted to prevent prejudice to the parties because of lack of notice, lack of proper representation, or some other disadvantage.” (Sacks, supra, 1 Cal.App.4th at p. 957.) The Court of Appeal went on to hold that any error was harmless, since none of the parties was prejudiced by Gaither’s death. (Id. at p. 959.)
Sacks is cited as “cf.” at the end of the Witkin passage quoted above, the author going on in the next paragraph to state that “This technical lapse [i.e., judgment against a dead person], however, does not render the judgment void and subject to collateral attack. The courts frequently describe it as a ‘mere irregularity,’ which renders the judgment ‘voidable only.’ (See Hogan v. Superior Court (1925) 74 [Cal.App.] 704, 709 [241 P. 584]; Machado v. Flores (1946) 75 [Cal.App.2d] 759, 762 [171 P.2d 440]; cf. Bliss v. Speier (1961) 193 [Cal.App.2d] 125, 126 [13 Cal.Rptr. 847].” (2 Witkin, Cal. Procedure, supra, § 317, p. 929.)
*1009 We are not aware of any void versus voidable case that deals with a default judgment taken against a dead person, as here. Perhaps in that case we might be inclined to hold in that situation that the judgment is void. Period. And, of course, a void judgment is subject to attack at any time. (Hayashi v. Lorenz (1954) 42 Cal.2d 848, 851 [271 P.2d 18]; Tearlach Resources Limited v. Western States Internat., Inc. (2013) 219 Cal.App.4th 773, 779 [162 Cal.Rptr.3d 110]; Manson, Iver & York v. Black (2009) 176 Cal.App.4th 36, 43 [97 Cal.Rptr.3d 522]; Rochin v. Pat Johnson Manufacturing Co. (1998) 67 Cal.App.4th 1228, 1239 [79 Cal.Rptr.2d 719].)[4] Or perhaps using the Sacks analysis in the default situation, that death is per se prejudice.
But we need not make such a holding to affirm the trial court here, because we can affirm on the basis on which it ruled, applying Sacks, finding prejudice, and vacating the judgment under section 473, subdivision (d).
Grappo’s second argument, his apparent attempt to overcome the trial court’s ruling, is as follows: “The Sacks court’s test for vacating a judgment involving a decedent upon a showing of prejudice does not apply to section 473 subdivision (d) relief.” The argument is not clear, and no clarity is added by Grappo’s distillation of it.
One thing that Grappo does argue is that reliance on section 473, subdivision (d) was not proper because it was “cited in [Cambra’s] Reply brief, which does not meet explicit statutory requirements for a noticed motion.” As noted, Cambra’s motion papers cited section 473, though not subdivision (d), which was first cited in the reply brief. Regardless, Grappo’s argument would not avail him, not in light of the cases that recognize a court has discretion to accept arguments or evidence made for the first time in reply. (See, e.g., Alliant Ins. Services, Inc. v. Gaddy (2008) 159 Cal.App.4th 1292, 1308 [72 Cal.Rptr.3d 259]; Plenger v. Alza Corp. (1992) 11 Cal.App.4th 349, 362, fn. 8 [13 Cal.Rptr.2d 811] [in summary judgment case, trial court had discretion to consider new evidence in reply papers as long as other party had opportunity to respond].)
Those cases would seem to apply a fortiori in the default context, with the strong presumption to provide a hearing on the merits. And most certainly in connection with section 473, which should be liberally construed, any doubts about its application to be resolved in favor of the party seeking relief from default. (Zamora v. Clayborn Contracting Group, Inc. (2002) 28 Cal.4th 249, 256 [121 Cal.Rptr.2d 187, 47 P.3d 1056] [“ ‘the provisions of section 473 .. . are to be liberally construed and sound policy favors the determination of *1010 actions on their merits’ ”]; Rappleyea v. Campbell (1994) 8 Cal.4th 975, 980 [35 Cal.Rptr.2d 669, 884 P.2d 126] (Rappleyea) [“[b]ecause the law favors disposing of cases on their merits, ‘any doubts in applying section 473 must be resolved in favor of the party seeking relief from default’ ”].) As one Court of Appeal has described, “substantial compliance” with statutory requirements is all that is required to set aside a default judgment (County of Stanislaus v. Johnson (1996) 43 Cal.App.4th 832, 837 [51 Cal.Rptr.2d 73]), and that rigid application of the requirements “fails to give full remedial effect to the statute” (ibid.; accord, Mann v. Cracchiolo (1985) 38 Cal.3d 18, 29 [210 Cal.Rptr. 762, 694 P.2d 1134] [in applying § 473, trial courts “ ‘should employ a flexible rather than rigid or formalistic approach to decisionmaking’ ”]).
All this is particularly apt here, where from the very beginning—that is, page 4 of the reporter’s transcript—the lengthy argument on Cambra’s motion focused on section 473. And, as quoted above, the trial court applied Sacks and found that: “Trustee has made a sufficient showing to vacate the judgment against Defendant Ken McKean. . . . Trustee has established that she was not given notice of the existence of the default or the application for default judgment, and thus had no opportunity to seek relief from the default before Default Judgment was entered against Defendant Ken McKean. The prejudice to the Trust is clear, and Trustee has made a sufficient showing that the judgment against Defendant Ken McKean is void. (Code Civ. Proc., sec. 473(d).)”
And prejudice there was, as Grappo’s counsel conceded below, when the trial court interrupted her “no prejudice” argument with the terse observation, “Well, motion to vacate the default”—and counsel replied, “Right.” There was prejudice. That ends Grappo’s “abuse of discretion” argument.
The closing of Grappo’s reply brief states that “equities and public policy strongly support maintaining the validity of the underlying judgment.” Nothing is cited in claimed support, which is perhaps not surprising, as the law is 180 degrees contrary, illustrated, for example, by Au-Yang v. Barton (1999) 21 Cal.4th 958, 963 [90 Cal.Rptr.2d 227, 987 R2d 697]: “ ‘[T]he policy of the law is to have every litigated case tried upon its merits, and it looks with disfavor upon a party, who, regardless of the merits of the case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary.’ ” Fasuyi, supra, 167 Cal.App.4th at page 696, is similar: “ ‘Because the law favors disposing of cases on their merits, “any doubts in applying section 473 must be resolved in favor of the party seeking relief from default [citations]. . . .” ’ In Witkin’s typically succinct statement of the rule, the remedial relief offered by section 473 is ‘highly favored and is *1011 liberally applied.’ (8 Witkin, Cal. Procedure, Attack on Judgment in Trial Court, [(4th ed. 1997)] § 152, pp. 653-654 and numerous cases there collected.)”
Indeed, the only case cited by Grappo for this argument—cited for the proposition that there should be ‘“finality of judgments”—makes this point in spades. And hardly helps Grappo. That case is Rappleyea, supra, 8 Cal.4th 975, which involved defendants from out of state who represented themselves. The court misinformed the defendants as to the correct filing fee for their answer, which caused the answer to be accepted for filing eight days late. The clerk entered the defendants’ default, and the plaintiff subsequently misinformed the defendants that they had no legal rights under section 473, even though the six-month limitation period to seek relief had not expired. When the defendants learned that a default judgment might soon be entered, they moved to set aside the default. The trial court denied the motion, eventually entered a default judgment, and the Court of Appeal affirmed. (Rappleyea, supra, at p. 980.) The Supreme Court reversed, with directions to reverse the default judgment and to instruct the trial court to set aside the entry of default, holding that the trial court abused its discretion in denying the defendants’ motion. (.Rappleyea, at p. 985.)[5]
*1012 II. The Default Judgment Was Not Supported
In Fasuyi, supra, 167 Cal.App.4th 681, we reversed a trial court that had denied relief from a default judgment, and remanded with instructions to vacate it and the default, to allow the defendant to plead. We began our discussion this way:
“The Role of the Court in Default Judgments
“It is, of course, the case that there is no opposing party in a default judgment situation. Thus, cases properly recognize that in such situation ‘it is the duty of the court to act as gatekeeper, ensuring that only the appropriate claims get through.’ (Heidary v. Yadollahi (2002) 99 Cal.App.4th 857, 868 [121 Cal.Rptr.2d 695]; see Electronic Funds Solutions, LLC v. Murphy (2005) 134 Cal.App.4th 1161, 1179 [36 Cal.Rptr.3d 663].)
“California Judges Benchbook: Civil Proceedings Before Trial (CJER 2d ed. 2008) (Benchbook) is a treatise that ‘focuses on the judge’s role.’ (Benchbook, supra, preface, p. v.) It provides ‘practical working tools to enable a judge to conduct proceedings fairly, correctly, and efficiently. [It is] written from the judge’s point of view, giving the judge concrete advice on what to look for and how to respond.’ {Ibid.)
“Chapter 16 of the Benchbook deals with defaults and default judgments, and in its second section of advice states that ‘[a] judge may enter a default judgment against a defendant only if the plaintiff has precisely followed certain procedures that ensure that the defendant received sufficient notice of the pending action to make an informed choice as to whether to defend or ignore the plaintiff’s claims. [Citations.] When the plaintiff fails to comply with these procedures, the defendant need not suffer the consequences of a default judgment. [Citation.]’ (Benchbook, supra, § 16.2, p. 371.) As the Court of Appeal put it in Lopez v. Fancelli (1990) 221 Cal.App.3d 1305, 1312 [271 Cal.Rptr. 87], the first case cited in the Benchbook: ‘The rules pertaining to defaults and default judgments must be precisely followed to ensure that a defaulting defendant is aware of plaintiff’s claims.’ ” (Fasuyi, supra, 167 Cal.App.4th at p. 691, underscoring omitted.)
The threshold issue in Fasuyi dealt with the various forms and papers that had to be filed preparatory to a proper default and default judgment. And so *1013 we quoted the sections of the California Judges Benchbook: Civil Proceedings Before Trial (CJER 2d ed. 2008) (Benchbook) we did. Another section of the Benchbook is apt here, section 16.33, entitled “Judge’s Evaluation of Allegations of Complaint.” This is what it says:
“A judge may not enter a default judgment against a defendant unless the plaintiff’s complaint states a cause of action against the defendant. Taliaferro v. Davis (1963) 216 [Cal.App.2d] 398 [31 Cal.Rptr. 164], The allegations of the complaint are not deemed admitted by the default. The plaintiff must prove each essential element of the complaint entitling the plaintiff to a recovery against the defendant. The plaintiff may not introduce evidence on claims not pleaded in the complaint; this would operate as an amendment to the complaint, opening the default and entitling the defendant to respond. Jackson v. Bank of Am. (1986) 188 [Cal.App.3d] 375, 387-389 [223 Cal.Rptr. 162],
“Plaintiffs in a default judgment proceeding must also prove that they are entitled to the damages claimed. Barragan v. Banco BCH (1986) 188 [Cal.App.3d] 283, 302 [232 Cal.Rptr. 758]; see Don v. Cruz (1982) 131 [Cal.App.3d] 695, 706-707 [182 Cal.Rptr. 581] (award of $100,000 in damages at default judgment hearing in personal injury action was excessive in light of plaintiff’s evidence which established only that she suffered some degree of discomfort without substantial evidence of disability); Petty v. Manpower, Inc. (1979) 94 [Cal.App.3d] 794 [156 Cal.Rptr. 622] (damages not fixed by contract must be proved).” (Benchbook, supra, at p. 894.)
Justice Bedsworth has well described this responsibility, most recently in Kim, supra, 201 Cal.App.4th at pages 272-273. Reversing the default judgment the trial court had entered, he repeated his “cautionary tale” for the trial courts: “And it is not the first time we have told this tale. As we previously explained in Heidary v. Yadollahi[, supra,] 99 Cal.App.4th 857, 868 [121 Cal.Rptr.2d 695], ‘[i]t is imperative in a default case that the trial court take the time to analyze the complaint at issue and ensure that the judgment sought is not in excess of or inconsistent with it. It is not in plaintiffs’ interest to be conservative in their demands, and without any opposing party to point out the excesses, it is the duty of the court to act as gatekeeper, ensuring that only the appropriate claims get through. That role requires the court to analyze the complaint for itself—with guidance from counsel if necessary—ascertaining what relief is sought as against each defaulting party, and to what extent the relief sought in one cause of action is inconsistent with or duplicative of the relief sought in another. . . .’ ” (Id. at p. 272.) Then, after noting that the trial court there, and in other cases, did not do what is required, and had entered the judgment in error, he concluded with this: “We need to shore this up. The court’s role in the process of entering a *1014 default judgment is a serious, substantive, and often complicated one, and it must be treated as such.” {Id. at pp. 272-273.) Indeed.
Proper application of the gatekeeper function should have precluded any default judgment here. For several reasons.
First, as noted above, Grappo’s complaint does not set forth the identity or relationship of any of the people or entities named in the caption. Indeed, he does not even indicate his own identity, or his claimed relationship with any of the defendants.
Second, the complaint does not comply with the California Rules of Court. For example, California Rules of Court, rule 2.112 provides that each cause of action should be headed so as to identify briefly the nature of the claim asserted and if there is more than one, it should identify the defendant or defendants against whom the cause of action is being asserted. As the leading practical treatise advises, failure to comply with rule 2.112 presumably renders a complaint subject to a motion to strike (§ 436), or a special demurrer for uncertainty. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2016) ¶ 6:113, pp. 6-33 to 6-34.)
Third, to the extent that any wrong is attempted to be asserted, they appear to be wrongs against the Michael A. Grappo 2003 Trust. Grappo is not the proper plaintiff. (§ 369; Portico Management Group, LLC v. Harrison (2011) 202 Cal.App.4th 464, 473 [136 Cal.Rptr.3d 151].)
Fourth, and most fundamentally, Grappo’s complaint does not state a claim for any loss of property. That is, reading Grappo’s complaint as liberally as one can in his favor, the only possible cause of action that deals with any ‘“property” allegedly lost is the eighth. That cause of action is styled ‘“Gross Negligence and Defalcation.” And the only reference to property is in the second of its two paragraphs, that quoted above: ‘“9. Defendant McKean further removed or authorized the removal of items of personal property belonging to some of the heirs of the Michael A. Grappo 2003 Trust without prior notification to said property owners and without ever notifying said property owners of the disposal of these items of personal property which were being stored at the Piedmont property site.” It does not state a cause of action.
We know of no cause of action for ‘“defalcation.” And “ ‘California does not recognize a distinct cause of action for ‘“gross negligence” independent of a statutory basis.’ ” (Eriksson v. Nunnink (2011) 191 Cal.App.4th 826, 856, fn. 18 [120 Cal.Rptr.3d 90].) Moreover, ‘“gross negligence” requires a “ ‘ “ ‘want of even scant care’ ” ’ or ‘ “ ‘an extreme departure from the *1015 ordinary standard of conduct.’ ” ’ ” (City of Santa Barbara v. Superior Court (2007) 41 Cal.4th 747, 754 [62 Cal.Rptr.3d 527, 161 P.3d 1095].) Certainly, that is not alleged here.
But even if Grappo’s claim were for ordinary negligence, it would fail, as such a claim requires a legal duty to use due care and breach of that duty. (Ladd v. County of San Mateo (1996) 12 Cal.4th 913, 917 [50 Cal.Rptr.2d 309, 911 P.2d 496]; Rowland v. Christian (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561].) Neither is alleged here.
If the complaint does not state a cause of action or the allegations do not support a claim for relief, a default judgment is erroneous and “cannot stand.” (Kim, supra, 201 Cal.App.4th at p. 282 [default judgment reversed where complaint failed to state cognizable claims against defendants]; see Falahati v. Kondo (2005) 127 Cal.App.4th 823, 829 [26 Cal.Rptr.3d 104]; Vasey v. California Dance Co. (1977) 70 Cal.App.3d 742, 749 [139 Cal.Rptr. 72] [defendants who defaulted did not admit corporation was their alter ego where complaint was insufficient in pleading elements to justify disregard of corporate entity].) As Falahati succinctly put it, “It is well established a default judgment cannot properly be based on a complaint which fails to state a cause of action against the party defaulted because, as Witkin explains, ‘[a] defendant who fails to answer admits only facts that are well pleaded.’ Because the third amended complaint alleged no facts with respect to Kondo, there were no facts for Kondo to admit.” (Falahati v. Kondo, supra, 127 Cal.App.4th at p. 829, fn. omitted.) And so, Falahati went on to hold, “The default judgment in the present case is void for two reasons. The complaint contained no factual allegations with respect to Kondo; therefore it failed to apprise him of the nature of plaintiffs’ demand against him. In addition, the complaint does not specify the amount of damages plaintiffs seek from Kondo . . . .” (Falahati, supra, at p. 830, fn. omitted, citing Christerson v. French (1919) 180 Cal. 523, 525-526 [182 P. 27].)
Were all that not enough, counsel for Grappo admitted at oral argument that Grappo’s complaint did not state a claim.
Finally, the default judgment is void for the additional reason that the $60,000 amount awarded to Grappo is not supported by the complaint. As quoted, the only property referred to is in the eighth cause of action: “items of personal property belonging to some of the heirs” of the trust. (Italics added.) The exhibit Grappo attached to the request, an e-mail from Attorney Habegger, refers to his understanding that his office had given Grappo “and other family members” a long opportunity to remove the items. According to the proofs of service, there are apparently six other Grappos spread throughout California and Oregon—apparently the other “heirs” or “family members” with some interest in the property.
*1016 DISPOSITION
The order is affirmed. Cambra shall recover her costs on appeal.
Miller, J., concurred.

 All undesignated statutory references are to the Code of Civil Procedure.

 As the comí noted below, and Grappo acknowledged, this second request for default was improper.

 Numerous cases have used such language since. (See, e.g., Johnson v. Simonelli (1991) 231 Cal.App.3d 105, 107, fn. 1 [282 Cal.Rptr. 205] [“If Violet died in 1989, the court’s judgment entered against Violet in 1990 was in excess of its jurisdiction and void as it was entered against a person who was no longer a party.”]; Herring v. Peterson (1981) 116 Cal.App.3d 608, 611-612 [172 Cal.Rptr. 240] [trial com! order was “in excess of its jurisdiction and void” where “defendant dies and no personal representative is substituted”]; Estate of Edwards (1978) 82 Cal.App.3d 885, 893 [147 Cal.Rptr. 458] [judgment entered after party intervener died was “void” because “the action could no longer proceed as to her, and it became necessary that someone be substituted for her. [Citation.] This was not done . . . .”].)

 As will be shown, the judgment here is void because the complaint does not support the default judgment entered for Grappo—indeed, any default judgment at all.

 We end this part of the opinion with brief comments about the dissent.
As Grappo’s counsel conceded at oral argument, Grappo’s complaint does not state a claim. Despite that, and despite that Grappo may be the poster child for an avaricious overreacher— improperly attempting to get a $12 million judgment against a known dead man—the dissent would resurrect the default judgment in Grappo’s favor. Why is hard to fathom. The stated reason for doing so is “the public policy favoring the finality of judgments,” citing Rappleyea, supra, 8 Cal.4th at page 982—a case, as discussed, that actually held the default judgment was improper, and it, and the default itself, had to be set aside. (Dis. opn., post, at p. 1016.) Regardless, the dissent says what it says, and we offer these few observations about it.
The dissent approaches the setting before us contrary to our role here (presuming the order is correct); contrary to the role of any court dealing with defaults (discretion liberally applied to grant relief); and contrary to public policy (cases are to be tried on the merits). It also disregards how we are to read the record—in favor of the trial court and in support of the order.
In its thorough analysis, the trial court found that, “Trustee has established that she was not given notice of the existence of the default or the application for default judgment, and thus had no opportunity to seek relief from the default before Default Judgment was entered against Defendant Ken McKean. The prejudice to the Trust is clear . . . .” The dissent states that this finding is not supported by substantial evidence, a position that includes that the dissent disagrees “that the Trustee’s lack of opportunity to seek relief from the default before entry of the default judgment alone was enough.” (Dis. opn., post, at p. 1030.) Indeed, and as noted, Grappo’s counsel conceded as much below when, in the course of her argument that there was no prejudice, that there was “nothing that could have been done” as McKean had defaulted, the court interrupted: “Well, motion to vacate the default.” Grappo’s attorney responded, “Right.” The dissent describes this as “little more than throat-clearing.” (Dis. opn., post, at p. 1030, fn. 14.)
The trial court found that the trustee did not have notice of the default. Notwithstanding this, and for some reason approaching the issue with a jaundiced eye, the dissent says “[f]or all we *1012 know from the record . . . the Trustee could have learned of the action from McKean before he died or from his partner and codefendant. Heather McMills, after he died but before the default judgment was entered.” (Dis. opn., post, at p. 1030.) We do not read the record to attempt to contradict things. To the contrary, “factual inferences drawn by [the trial court] are presumed correct.” (Shapiro v. Clark (2008) 164 Cal.App.4th 1128, 1140 [80 Cal.Rptr.3d 398].)