Filed 1/27/23  Lethermon v. Lawrence CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KIMBERLY PINSON-LETHERMON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>SHARALYN LAWRENCE,<br><br>        Defendant and Respondent. | A161920<br><br>(Alameda County<br>Super. Ct. No. RG19034889) |
| SHARALYN RENEE LAWRENCE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>KIMBERLY PINSON-LETHERMON,<br><br>        Defendant and Appellant. | A164153<br><br>(Alameda County<br>Super. Ct. No. HG19035385) |
| KIMBERLY PINSON-LETHERMON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ROBBIE WILSON,<br><br>        Defendant and Respondent. | A164268<br><br>(Alameda County<br>Super. Ct. No. RG19034896) |

1

These consolidated appeals involve three related cases. Two neighbors who live across the street from each other, Kimberly Pinson-Lethermon and Sharalyn Lawrence, filed separate cases against each other in Alameda County Superior Court, each seeking a civil harassment restraining order against the other. The matters were heard together and, after taking evidence, the trial court denied Pinson-Lethermon's request for a restraining order against Lawrence and granted Lawrence a restraining order against Pinson-Lethermon. Pinson-Lethermon also filed a related case against Lawrence's ex-partner, Robbie Wilson, requesting a civil harassment restraining order against Wilson as well. The trial court dismissed that other case without prejudice on stipulation of the parties.

Pinson-Lethermon now appeals the orders in all three related cases. We hereby consolidate the three appeals and affirm all three orders.

**BACKGROUND**

The record does not contain a complete set of the papers filed in support of Pinson-Lethermon's request for a restraining order against Lawrence (at a minimum, missing is the petition itself, filed on September 12, 2019, and the register of actions). But from our review of the hearing transcript, it appears Pinson-Lethermon sought a restraining order against Lawrence principally based on allegations that Lawrence had been harassing her by filming Pinson-Lethermon at her home at various times, and also based on allegations Lawrence falsely accused her son of knocking Lawrence's daughter off her bicycle.

For her part, Lawrence sought a restraining order against Pinson-Lethermon based on allegations that Pinson-Lethermon had been verbally harassing her and her young daughter both in person and on social media, including with homophobic rants and threats of violence. She also alleged

2

that Pinson-Lethermon's son had crossed the street to push her daughter off of her bicycle.

The two cases were heard together on November 10, 2020, and at the hearing, both Pinson-Lethermon and Lawrence testified. Four other neighbors testified on Lawrence's behalf. Collectively, Lawrence and her witnesses testified about various acts of intimidation carried out by Pinson-Lethermon, including igniting loud fireworks on multiple occasions, playing her car music at loud volumes, shining headlights into homes late at night and shouting obscenities (for example, calling Lawrence—who is a lesbian—a pedophile and a racist). Pinson-Lethermon denied harassing Lawrence and her family, accused Lawrence of harassing her and her son by watching and filming them, testified that Lawrence's witnesses are racist and mentally ill and admitted lighting fireworks on only one occasion. She also testified Lawrence had been posting about her on Facebook and that when she tried to discuss the situation, Lawrence's ex-wife Wilson drove up and scared her.

At the conclusion of the hearing, the trial court denied Pinson-Lethermon's request for a restraining order and granted Lawrence's request for a three-year restraining order against Pinson-Lethermon. The court made an adverse credibility finding against Pinson-Lethermon, commenting that it found her allegations to be "unconvincing." It found that "a lot of her motivation was to retaliate [against Lawrence] for what she perceives to be wrongful claims against her son," she "seems to harbor a disdain for lesbians" and she harbored a "perception that her neighborhood is racist against her." The court found she had both shouted and also posted on social media hateful comments about Lawrence and had been lighting off firecrackers multiple times.

3

As noted, Pinson-Lethermon had also filed a separate case against Wilson arising from the same basic neighborhood controversy, alleging Wilson would come over to Lawrence's house and try to physically attack Pinson-Lethermon and her son. She was initially granted a temporary restraining order against Wilson. Ultimately, however, in a separate hearing also held on November 10, 2020, Pinson-Lethermon's request for a restraining order against Wilson was dismissed. The minute order from the November 10, 2020 hearing in that related case states in relevant part: "The Court takes notice that this is a compliance hearing after the settlement agreement filed on 03/12/2020. [¶] Petitioner states that there is no violation by the Respondent of the settlement agreement. [¶] In view thereof, the Court dismissed the case without prejudice. [¶] Petition for Injunction Prohibiting Harassment dismissed by Court without Prejudice—Pursuant to Stipulation of Parties."

Pinson-Lethermon then filed timely appeals in all three cases, which were docketed separately in this court as case numbers A161920, A164153 and A164268. She then filed a motion asking us to consolidate all three appeals which we took under submission. No respondent's brief has been filed in any of the appeals. Having reviewed the records and briefing, we hereby order case numbers A161920, A164153 and A164268 consolidated for all purposes.

## DISCUSSION

Our ability to afford relief on appeal is limited and is governed by rules, some of which bear mention here. The most basic rule on appeal is that an appellate court must begin by assuming that the trial court's ruling is correct, and from that starting point the burden is on the party appealing to demonstrate that the trial court committed an error. (See *Grappo v. McMills*

4

(2017) 11 Cal.App.5th 996, 1006.)  Our starting presumption that there was no error includes the assumption, unless the appellant demonstrates otherwise, " ' that the record contains evidence sufficient to support the [order].' " (*City of Calexico v. Bergeson* (2021) 64 Cal.App.5th 180, 185.)  The appealing party demonstrates error only if he or she does all of the following: (1) provides an adequate record on appeal that contains all of the relevant matters that were before the trial court (see *Jameson v. Desta* (2018) 5 Cal.5th 594, 609); (2) provides a citation to the record for every factual statement in its brief (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 156); and (3) makes an argument that is both understandable and supported by a discussion of relevant law.  (See *United Grand*, at p. 153; *Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 654.) Furthermore, even where those rules are followed, an appellate court has no power to " 'reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' " (*In re Caden C.* (2021) 11 Cal.5th 614, 640.) The powers to make factual findings, and to believe or disbelieve witnesses, belong solely to the trial court.  We review the court's ruling principally to decide if the trial court applied the law correctly to the facts it found to be true, and that is all.

Here, we are unable to discern a meaningful appellate argument in Pinson-Lethermon's appellate briefing.  Her briefs in all three appeals largely re-argue the facts and make conclusory points that are not developed in any way or supported by any discussion of California law.  (For example, in her appeal of the restraining order Lawrence secured against her, she asserts among other things that the trial judge was biased against her because of her language, pre-judged the case and admitted hearsay evidence.)  Pinson-Lethermon has asked us to review the transcript of the November 10, 2020

5

hearing.  We have done so, and we discern no error.  There is no indication of bias or any other judicial impropriety in the way these cases were handled, and the rest of Pinson-Lethermon's points are unmeritorious.

Finally, her appeal from the dismissal of her case against Wilson fails for an additional reason.  The minute order from the hearing shows that Pinson-Lethermon consented to the dismissal of her request for a restraining order against Wilson, and so there is no basis for us to disturb the court's ruling in that case.  A party who consents to a trial court action cannot complain of error on appeal.  (*Atchison, T. & S.F. Ry. Co. v. Hildebrand* (1965) 238 Cal.App.2d 859, 861 ["[i]t is . . . an elementary rule of appellate procedure that a judgment or order will not be disturbed on an appeal prosecuted by a party who consented to it"].)

## DISPOSITION

The orders are affirmed.

_____
STEWART, P.J.

We concur.


_____
RICHMAN, J.


_____
MILLER, J.


*Pinson-Lethermon v. Lawrence* (A161920), *Lawrence v. Pinson-Lethermon* (A164153), *Pinson-Lethermon v. Wilson* (A164268)