Filed 1/28/25  Karewicz v. Wright CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ANNA KAREWICZ et al., <br><br>    Defendants and Respondents, <br>v. <br>DUSTAN WRIGHT, <br><br>    Plaintiff and Appellant; <br>DEPARTMENT OF HEALTHCARE SERVICES AND ESTATE RECOVERY, <br><br>    Defendant. | A170145 <br><br>(Alameda County <br>Super. Ct. No. RG20080912) |

Dustan Wright, who is self-represented, appeals from a judgment of dismissal entered after the court sustained a demurrer without leave to amend to his third amended complaint and from a post-judgment order entered March 6, 2024, approving a settlement by and between other parties. We affirm both.

### BACKGROUND

According to the allegations of the operative third amended complaint (and, regarding the procedural history, the record in this case), in the summer of 2012 Wright began living in a home in Oakland, California, along

with several other occupants including Anna Karewicz, who had been living there since the previous year.

Allegedly, title of record to the home was in the name of Mary Esther Bates, who had died in 2008.  A security interest allegedly was held by the Estate of Bessie Joseph (through an heir, James Alex Joseph).  But according to the complaint, the property "for all given purposes" appeared to be abandoned "both physically and literally," because there were no records on file with the Alameda County Recorder's Office reflecting who owned it after Bates's death.  Since 2008, there had been no change in ownership filed with the county (see Rev. & Tax. Code, § 480), Wright was unaware of any heirs, the property had not been maintained, and no property taxes had been paid.  And in 2010, the City of Oakland had recorded a notice of "Prospective Lien and Special Assessment" reflecting that the property was in substandard condition and the City would commence an abatement action.

Beginning in the summer of 2012, Wright began performing maintenance and repairs on the property, mostly by himself.  He alleged that the extent of labor and work he did over the ensuing years was based on his unawareness of any heirs who owned the property.  With others' help, he painted the exterior of the house (by August 2012).  And over the next 10 years, he continued to perform repairs and improvements until May 13, 2022.  The complaint does not allege whether and/or when he moved out of the property.

Around the time Wright moved in, in July 2012, the City of Oakland investigated the property as a possible blight, with reports of broken windows, peeling paint and possible squatters living on the property.  The investigation was closed after one of the home's occupants showed a city housing inspector a recorded homestead declaration, and the inspector noted

that no broken windows were seen, and the front of the building had recently been painted.

During the period of Wright's occupancy, Alameda County twice gave notice of its intent to sell the property due to delinquent property taxes. In September 2015, the County recorded a "Notice of Power to Sell" the property due to unpaid property taxes for fiscal year 2007/2008 in the amount of $11,812; in response, the home's occupants paid the delinquent taxes (in an unspecified amount). Then in February 2016, the County posted on the property a notice of its intent to sell the property because property taxes had been in default for five or more years, and the home's occupants paid off the remaining delinquent taxes (in an unspecified amount). Wright allegedly paid most of the delinquent taxes assessed since January 2008 and, after that, continued to pay most of the property taxes assessed on the property. Copies of public records attached to the complaint reflect that payments of more than $39,000 were made for tax years 2007/2008 through 2020/2021.[1]

On January 5, 2018, Wright allegedly agreed with Karewicz and the other occupants to perform structural repairs to the house in exchange for wages, and their agreement terminated on June 8, 2020, when the other occupants were "ejected" from the premises for non-payment of bills, with an unpaid balance remaining due Wright in an unspecified amount for his labor under their contract.

Litigation ensued. In November 2020, Karewicz filed an action to quiet title to the property in her name based on adverse possession. Several

---

[1] Specifically, they show that in March 2016, the county was paid $22,696 (including penalties) for delinquencies for tax years 2007/2008 through 2011/2012, and the county assessed approximately $17,000 in additional property taxes for subsequent years through 2020/2021.

months later, in April 2021, defendant Tyehimba Kokayi, Bates's son and one of her heirs, petitioned for probate of the Bates estate and in June 2021 was appointed the estate's administrator. In May 2021, he filed a declaration in the probate case identifying the property as an asset of the estate, stating it was still in his mother's name and was worth $450,000, and stating a squatter had moved into the property "some years ago" and was asserting a claim to adverse possession.

The record reflects that Kokayi filed a cross-complaint in the quiet title action in August 2021 against Karewicz, Wright and other alleged squatters who occupied the house, asserting claims for conversion, trespass and other claims and seeking to eject them from the property.[2] The record also reflects that Wright filed this action against the Bates estate and Kokayi on February 22, 2022, and that it was subsequently consolidated with the quiet title action and the probate case.

Wright alleged he continued to perform repairs to the home until May 13, 2022. On June 6, 2022, he recorded a mechanics lien for $89,317 in unpaid labor and materials for structural and other repairs he had performed. Kokayi allegedly learned about the maintenance and repairs Wright had been performing when a court-appointed probate referee inspected and appraised the property in the summer of 2021. Despite Kokayi's alleged knowledge of the situation, Kokayi did not file a notice of non-responsibility under Civil Code section 8444 to disclaim responsibility for

---

[2] According to the register of actions, on November 9, 2021, Kokayi filed a request for entry of "default/judgment" against Wright on the cross-complaint and "default" was entered. The register of actions does not reference any further proceedings against Wright on the cross-complaint.

4

the work.[3]  Thereafter, in 2023, Kokayi filed a change of ownership with the local assessor.  Wright was given notice of the probate as a potential creditor, did not file a creditor's claim and alleges none was required.

Wright amended his complaint three times after demurrers were sustained.  As relevant here, his third amended complaint asserted six causes of action against Kokayi, in his capacity as administrator of the Bates estate:

(1) a first cause of action for "breach of obligation", a 13-page count alleging Kokayi violated Revenue and Taxation Code section 480 by failing to file a change in ownership statement with county officials following Bates's death, failed to pay property taxes, and violated numerous statutory obligations in connection with the administration of Bates's estate that enabled him and the other heirs to conceal their ownership interest in the property.  Among the violations, he alleged Kokayi had a duty to file an inventory and appraisal in the probate proceedings that either provided compensation to him for the work and materials he furnished under Probate Code sections 8800 and 8850 or reject the benefit received pursuant to a notice of non-responsibility under Civil Code sections 8442 and 8844.  He alleged that Kokayi's voluntary acceptance of the benefits, without filing a notice of non-responsibility within 10 days, constituted an acceptance.

(2) A second cause of action for fraudulent deceit, largely premised on the same allegations and legal theories;

(3) A third cause of action for quasi-contract based on unjust enrichment;

---

[3]  The filing of such a notice prevents a mechanics lien from arising with respect to "[t]he interest of a person that did not contract for the work of improvement, if work for which the lien is claimed was provided with the knowledge of that person."  (Civ. Code, § 8442, subd. (b).)

5

(4) A fourth cause of action for enforcement of a mechanics lien, which he also asserted against Karewicz as an indispensable party; and

(5) two equitable causes of action: a fifth cause of action for promissory estoppel and a seventh cause of action for equitable estoppel.[4]

Karewicz filed a demurrer to the third amended complaint (apparently in its entirety, despite the fact she was sued only in the mechanics lien count) and Kokayi filed a joinder. None of the papers are in the record.

The court sustained the demurrer without leave to amend and entered a judgment of dismissal. It subsequently entered a minute order approving a settlement of the quiet title case between Karewicz and Kokayi in his capacity as administrator of the Bates estate. Wright timely appealed from both the judgment of dismissal and the post-judgment minute order.

## DISCUSSION

Wright's briefing is unfocused and difficult to understand.

We presume that the trial court's demurrer ruling is correct, and it is an appellant's burden to persuade us of an error. (See *Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1006 [calling such framework "[t]he most fundamental principle of appellate review"].) To do this, " 'an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146 (*United Grand Corp.*).) "Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage*

---

[4] There is no sixth cause of action, presumably an inadvertent numbering error.

6

*Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078.) We are not required to develop an appellant's argument for him and thus disregard conclusory arguments that either lack citation to any relevant legal authority or fail to spell out the appellant's reasoning (or both). (*United Grand Corp.*, at p. 153.) In short, when an appellant fails to "convince us, by developing his arguments, stating the law, and calling out relevant portions of the record, that the trial court committed reversible error," the appellant's argument is insufficient to demonstrate error. (See *Bishop v. The Bishop's School* (2022) 86 Cal.App.5th 893, 910.) Furthermore, the only issues we are required to consider are those clearly identified in an argument heading. If there are other arguments for reversal buried somewhere in the appellant's brief they are forfeited because we aren't required to ferret them out (even if, without any appropriately informative headings, we could). (See *United Grand Corp.*, at p. 153; *Tsakopoulos Investments, LLC v. County of Sacramento* (2023) 95 Cal.App.5th 280, 310.)

Here, Wright has not affirmatively shown any error.[5]

The trial court sustained the demurrer to his first cause of action (denominated one for "breach of obligation") on the ground that none of the various statutes and ordinances he pled as the source of a legally enforceable obligation create a private right of action. We perceive no intelligible argument in his appellate briefing addressing that issue, or otherwise demonstrating that his first cause of action is legally viable.

The same is true of his second cause of action for fraudulent deceit, as to which the trial court ruled Wright failed to allege any colorable theory of

---

[5] We presume the parties' familiarity with the legal standards governing a demurrer and our de novo standard of review of an order sustaining a demurrer without leave to amend.

fraud. Here again, we discern no intelligible legal argument demonstrating that he alleged facts sufficient to state a fraud claim. Wright's argument seems to boil down to the contention that Kokayi "willfully suppressed[] his ownership-interests in the subject real property from 2008 until 2021" while all along allegedly knowing that Wright had done work to repair the property. He also contends that Kokayi engaged in fraud by concealing his knowledge of Wright's work from the probate court, including through "active concealment" of the inventory and appraisal that was required to be filed in the probate proceeding. He cites no legal authority supporting the contention that such circumstances constitute actionable fraud.

Likewise, Wright has not demonstrated the trial court erred in rejecting his cause of action for foreclosure of a mechanics lien. A mechanics lien does not exist unless the work has been "authorized." (Civ. Code, §§ 8400, 8402.) And it can only be "authorized" if "[i]t is provided at the request of or agreed to by the owner," or "[i]t is provided or authorized by a direct contractor, subcontractor, architect, project manager, or other person having charge of all or part of the work of improvement or site improvement." (*Id.,* § 8404.) The trial court ruled Wright failed to allege sufficient facts to show authorization because he did not allege his work had been authorized by any of these statutorily enumerated people. On appeal, Wright asserts the work could not have been authorized until after he had already begun it, because Kokayi had suppressed his ownership interest in the property. But the point is vague, conclusory and undeveloped, and lacks any discussion of the law of mechanics lien sufficient for us to consider whether such an

8

exception has been or should be judicially recognized.  So, it is insufficient to demonstrate error.[6]

Captioned under headings addressing his causes of action for quasi-contract, promissory estoppel and equitable estoppel, Wright also asserts he alleged facts sufficient to state claims sounding in various equitable doctrines.  Again, we are not persuaded.  He has not cited any law, or developed any coherent legal argument, that someone who for many years and without permission lived rent-free in a home (which is located, no less, in the San Francisco Bay Area, a housing market widely recognized as among the nation's most expensive) has an equitable basis to recover from the property's owner or heirs the cost of labor and materials he voluntarily furnished in order to maintain the property in a habitable condition or to recoup the cost of payments made to creditors to prevent the property's forced sale.  Theoretically, such a person might have an equitable claim against his fellow *occupants* for such expenditures, but that issue is not before us because Wright did not assert these equitable causes of action against any of his fellow occupants.

Finally, in addition to challenging the demurrer ruling, Wright has filed an appeal of a post-judgment minute order filed on March 6, 2024, approving a settlement of the quiet title action between Karewicz and Kokayi after a mandatory settlement conference, subject to approval by the probate

---

[6] We do not consider the new argument Wright makes for the first time in his reply brief—that *Karewicz* authorized the work.  (See *United Grand Corp., supra,* 36 Cal.App.5th at pp. 157-158.)  " 'Fairness militates against allowing an appellant to raise an issue for the first time in a reply brief because consideration of the issue deprives the respondent of the opportunity to counter the appellant by raising opposing arguments about the new issue.' "  (*Id*. at p. 158.)

court. Pursuant to the settlement, Kokayi in his capacity as administrator "shall be paid $95,000 from the proceeds of the sale of the subject property."

Citing this court's decision in *Roth v. Jelley* (2020) 45 Cal.App.5th 655, which invalidated a court-approved settlement that eliminated an heir's interest under a will without notice to the heir, Wright argues that he had a due process right to notice and an opportunity to be heard in the quiet title case before it was settled but was not named as a party, and thus the order approving the settlement is void. But as *Roth* makes clear, due process requires notice and an opportunity to be heard only if a proceeding could adversely affect a person's life, liberty or property interest. (*Roth*, at pp. 667, 670.) Unlike in *Roth* (see *id*. at pp. 668-670), Wright has not shown he has any protectible property interest at stake in the proceedings for which he says he is entitled to due process protections. We are upholding the trial court's rejection of his mechanics lien claim for the reasons already discussed; and he does not have a lien against the property to secure his payment of taxes. So, he has failed to demonstrate he had a due process right to participate in the quiet title action.

He also argues that he was subject to compulsory joinder in the quiet title case pursuant to Code of Civil Procedure section 389. But the very sparse record we have on appeal does not show that he raised this issue in the trial court, and a claim of error under Code of Civil Procedure section 389 cannot be raised for the first time on appeal. (*Jermstad v. McNelis* (1989) 210 Cal.App.3d 528, 538.) In his reply brief, he asserts that he "directly referenced" this issue in his opposition to Karewicz's demurrer, but the cited passage is from a one-page excerpt of a document he has included in the record that appears to be an opposition to a demurrer to an *earlier* version of his complaint in *this* case, not the quiet title case, and, in any event, it is

10

insufficient to preserve the claim.[7]  As in *Jermstad*, it "fails as a vehicle for tendering the issue of compulsory joinder because it did not alert the trial court that such a claim was tendered." (*Id*. at p. 538.)  "There was no mention of compulsory joinder" and cited no authority concerning that subject.  (*Ibid*.)

## DISPOSITION

The judgment and post-judgment order entered March 6, 2024, are affirmed.

---

[7] The cited excerpt is from Wright's opposition to Karewicz's demurrer to the first amended complaint.  It states:  "It is 'puzzling' that the [action to quiet title] did not include Laborer Dustan Wright, who[] is alleged to have a known interest in the subject Real-Property—that would have informed the Plaintiff sooner."

_____
STEWART, P.J.

We concur.

_____
RICHMAN, J.

_____
MILLER, J.

*Karewicz v. Wright* (A170145)