Filed 3/11/21 R.W. v. D.B. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| R.W.,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>D.B.,<br><br>        Defendant and Respondent. | A157897<br><br>(Contra Costa County<br>Super. Ct. No. D1705488) |

On April 26, 2019, appellant R.W. (father) filed a request for a change of custody concerning his two sons, R. and A. (then nearly 15 and 12 years old), because he was moving to New Jersey for a new job and wanted his sons to relocate with him. After a contested evidentiary hearing involving several witnesses, the trial court denied father's request. He now appeals.

We affirm.

### BACKGROUND

Father's appellate briefing is challenging. It summarizes the facts and proceedings in a confusing, one-sided manner that lacks citations to the appellate record in many instances, and does not summarize any of the

1

evidence from the contested evidentiary hearing.[1]  Based on our review of portions of the record, we ascertain the following:

### A.    Prior Out of State Custody Awards

Appellant and his ex-wife, respondent D.B. (mother), were married and living together in Delaware when their two sons were born, R. in 2004 and A. in 2007.  While living in Delaware, mother cared for the boys as a stay-at-home parent while father worked outside the home.  Around 2009 or 2010, father lost his job and so mother entered the workforce.  In 2011, father accepted a new job in Ohio and moved there with the boys.  Mother was working in Maryland at this point, and the parties agreed she would keep her job there to provide financial security for the family in case father became unemployed again.[2]  Every weekend, from Thursday to Monday, she traveled to her family in Ohio, where they rented a condominium under her name.  She testified she parented her sons during that period even while living away from them in Maryland for part of the week.

In 2013, the parties obtained a judgment of divorce in Maryland.

Thereafter, in 2015, an Ohio state court entered a custody decree, which recites it was reached by agreement.  The 2015 Ohio custody decree designated each parent "legal custodian of the minor children while in their

---

[1]  In addition, although appellant designated a clerk's transcript on appeal, he has filed two volumes of an appendix that include some documents that mother says have been altered.  Other than as specifically discussed in this opinion, we have disregarded the contents of the appellant's appendix.

[2]  According to court documents from a Maryland custody proceeding in the record, mother got a job in Maryland in October 2011 and the family moved there.  Father couldn't find a job in Maryland, though, and so after several months (in December 2011) he and the children moved to Ohio where he had been offered a job, with mother staying behind in Maryland to remain gainfully employed.

respective possession," and designated father as "residential parent for school purposes only." It incorporated by reference a "shared parenting plan," and required father to file a "notice of intent to relocate if he intends to move to a residence other than the one specified in this order."

In 2016, father lost his job in Ohio and moved back to Maryland with the boys, where they were enrolled in school for about a semester, alternating weekly between mother's and father's homes (during the summer months). Mother testified she was the primary residential parent for them while they were in school in Maryland.

Then, in late 2016, father accepted a new job and moved to Northern California with the children (who were then in elementary school and middle school).

Shortly after that, in January 2017, a Maryland state court awarded the parents continued joint legal custody and "primary residential custody of the minor children for school purposes" to father. Mother had the right to travel to visit the children up to three times a year in California at father's expense, with additional visits at her own expense. The order gave her significant periods of custody during summer break and holidays as well as daily phone access to the children when at father's home. It also ordered that if father moved from Northern California in the next five years, mother would gain "residential" custody of the children.

Later that year (2017), mother got a job in California and relocated to Northern California with her new husband (who gave up his own job), in order to be near the children.

### B. These Proceedings

These family law proceedings commenced in Contra Costa Superior Court several months later, in November 2017, when father registered the 2015 Ohio custody decree.[3]

Subsequently, on May 21, 2018, the superior court entered an order awarding the parents continued joint legal and physical custody of the children, with mother having physical custody three weekends a month and dinner together weekly on Wednesdays (plus alternating weekends when school is not in session), and specifying that the prior Ohio and Maryland orders were to remain in effect regarding holidays. The order prohibited the children from being relocated out of state without a court order. It ordered father to pay mother $2,000 in relocation expenses, and $4,000 in attorney fees.

In July 2018, father's employer asked him to relocate out of state, but he declined because of the move-away limitation in the May 2018 custody order. He lost his job, got evicted from his home and, with mounting debt, his finances worsened.

On September 18, 2018, the superior court entered an order continuing the parties' joint legal custody and expanding mother's shared physical custody schedule to every other week. The order recites that it is intended as a final custody order.

In January 2019, father gave notice to mother he'd found a new job but was being asked to relocate to New Jersey or be fired.

Thereafter, on April 26, 2019, father petitioned for a change of the September 18, 2018 custody order, seeking permission to relocate with his

---

[3] It is not clear why registration of the Maryland decree also was not sought, but irrelevant.

4

sons to New Jersey. Mother responded by filing her own request for a change in custody, requesting full legal and physical custody of the children. Citing the children's need for stability, the primary basis was that mother had relocated to California to be with the children and the children's lives were settled in California. She stated the children wanted to remain living with her in California.

The matter proceeded to an evidentiary hearing on July 24, 2019, at the conclusion of which the court orally denied father's request for full custody of the boys, and designated mother as the boys' primary custodial parent during the school year with father having physical custody of them in New Jersey during the vast majority of non-school periods.[4]

This appeal followed.

By way of relief on appeal, father asks us to "reverse the Superior Court's orders covering the one year, two months, and two days that are appealed; reinstate [his] rights and physical custody to its status prior to the Superior Court's involvement in the move-away case on May 21, 2018," remand the case with instructions to grant his move-away request and order the trial judge recused. In his reply brief, he asks us to reverse the court's orders and "reinstate his 8-year physical custody to its May 21, 2018 status" as well as to award him $20,000 in damages

## DISCUSSION

The most fundamental principle of appellate review is that " 'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' "

---

[4] Father was awarded custody of them every Thanksgiving break, every spring break, winter breaks in alternating years, and all but 17 days of every summer break.

(*Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1006.) In light of that presumption, "the burden is on [the appellant] to demonstrate error—and also 'prejudice arising from' that error." (*Ibid*.)

" 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' [Citation.] . . . 'We are not obliged to make other arguments for [appellant] [citation], nor are we obliged to speculate about which issues counsel intend to raise.' [Citations.] We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.) " 'In civil appeals, the appellate courts are *not* required to perform an unassisted study of the record or a review of the law relevant to a party's contentions on appeal. [Citations.] Instead, a party's failure to perform its duty to provide argument, citations to the record, and legal authority in support of a contention may be treated as a waiver of the issue.' " (*In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 808.)

In this case, several of father's arguments on appeal, while supported by citation to legal authority, are not intelligible (principally, his contentions the court's ruling denied him due process, violated his constitutional rights and subjected him to involuntary servitude). We will address his remaining arguments as best we understand them. "Although we exercise our discretion to consider those issues we can discern in [appellant's] unsystematic and often incoherent arguments, there are times when it is simply not possible for us to understand what [appellant] is arguing. Any

arguments not discussed in this opinion are deemed forfeited." (*United Grand Corp. v. Malibu Hillbillies, LLC, supra,* 36 Cal.App.5th at p. 153.)

### 1. Jurisdiction

Before turning to the merits, we briefly address the subject of appealability.  Father's notice of appeal (filed on July 30, 2019) states it is from a "judgment" entered after a court trial on July 24, 2019.  No such judgment appears in the record, and mother argues that father has failed to file a duly perfected appeal from any of the rulings he challenges in his appellate brief.

We agree that father cannot challenge the court's rulings on May 21, 2018 (changing custody and imposing an award of legal fees and costs) or September 18, 2018 (changing custody), because father has not appealed from those orders.  But father's challenge to the court's July 24  2019 decision rejecting his April 2019 move-away request is properly before us.  Final custody orders are appealable.  (See Code Civ. Proc., § 904.1, subd. (a)(14).)  Here, at the conclusion of the July 2019 evidentiary hearing, the trial court directed counsel for respondent to prepare findings and orders on the court's custody decision.  The register of actions reflects that the court entered its written findings and order on August 14, 2019, and a copy is included in the "appendix" father has filed (see footnote 1, *ante*, page 1).  Liberally construing father's notice of appeal as we must, we will construe his appeal as having been prematurely filed and taken from the later order of August 13, 2019, entered after the contested hearing.  (See Cal. Rules of Court, rule 8.104(d).)

### 2. Analysis

"The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test.  [Citation.]  The precise measure is

7

whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child. We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.)

Here, father argues the trial court applied the wrong legal standard in ruling on his relocation request. He contends the court improperly evaluated his request under a "best interest standard" rather than under a "change of circumstances" standard. He argues that he effectively had sole physical custody of the children at the time he made his move-away request (and had been their primary caretaker for eight years) and that, in these circumstances, the court "cannot justify change of custody [to mother] simply because [father], the custodial parent of eight years . . . is made to relocate for a sound good faith reason to a different state." These arguments are conclusory and undeveloped, and we reject them.

First, the factual premise of father's argument is incorrect. By the time of the contested move-away request, father and mother shared joint legal and physical custody of their sons, alternating weekly, an arrangement that had been in place since the September 2018 custody order entered in this case. "When the parents have joint physical custody, modification of the co-parenting arrangements is not a change of custody requiring change of circumstances. Instead, *the trial court has wide discretion to choose a parenting plan that is in the best interest of the child*. [Citation.] The joint custody moving parent does not have the presumptive right to change the child's residence, and bears no burden of proving the move is essential or imperative. [Citation.] Nor does the nonmoving parent bear the burden of showing substantial changed circumstances require a change in custody . . . ." (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 363-364, italics added.) Even

8

father acknowledged below that his move-away request implicated his children's best interests: he opened the contested hearing by telling the court "[t]he matter before this court is about my children's best interest."

Even accepting father's contention he was the primary custodial parent, moreover, the court did not apply the wrong legal standard to evaluate his move-away request. *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072 establishes the legal standard that applies when a primary custodial parent wishes to relocate. In this circumstance, our Supreme Court explained, "[T]he noncustodial parent bears the initial burden of showing that the proposed relocation of the children's residence would cause detriment to the children, requiring a reevaluation of the children's custody. The likely impact of the proposed move on the noncustodial parent's relationship with the children is a relevant factor in determining whether the move would cause detriment to the children and, when considered in light of all of the relevant factors, may be sufficient to justify a change in custody. If the noncustodial parent makes such an initial showing of detriment, the court must perform the delicate and difficult task of determining whether a change in custody is in the best interests of the children." (*Id.* at p. 1078.)

In *LaMusga*, the California Supreme Court stressed the highly discretionary nature of this undertaking, noting that superior court judges must be permitted "to exercise their discretion to fashion orders that best serve the interests of the children in the cases before them." (*LaMusga, supra*, 32 Cal.4th at p. 1101.) It explained that, "Among the factors that the court ordinarily should consider when deciding whether to modify a custody order in light of the custodial parent's proposal to change the residence of the child are the following: the children's interest in stability and continuity in the custodial arrangement; the distance of the move; the age of the children;

9

the children's relationship with both parents; the relationship between the parents including, but not limited to, their ability to communicate and cooperate effectively and their willingness to put the interests of the children above their individual interests; the wishes of the children if they are mature enough for such an inquiry to be appropriate; the reasons for the proposed move; and the extent to which the parents currently are sharing custody." (*Ibid.*)

In this case, the trial court expressly considered all of the *LaMusga* factors, discussed them on the record, and concluded they weighed in favor of maintaining the children's primary residence with mother in California. Considering the children's interest in stability and continuity, the court found that the children "have moved around a bit and have been in California for sometime now, a few years" and appeared to be doing relatively well in school (noting that one child was "doing fantastic" and the other child had been "doing quite well until recently," and was still "doing okay"). It found the distance of the proposed move was "very long": approximately 2500 miles away. It considered the children's ages (14 and 11), and found they have a good relationship with both parents. It noted concern with the parents' ability to cooperate and communicate effectively, because it found father is very critical of mother in various ways. The court found that mother was the children's "primary school year parent" and believed she is more likely than father to cooperate and communicate effectively about the children. Considering the children's wishes, the court noted that the older son was "slightly" in favor of remaining in California to graduate high school. The younger son, it found, is too young to have an impactful opinion. The court found father's reason for the move legitimate, and that both parents were currently sharing joint custody on a 50/50 basis. Having reviewed these

factors, the court concluded that "it is in the best interest of the children to remain in California for the primary school year."

Father has not discussed any of the evidence bearing on the application of these factors, nor the court's analysis of them. He thus has failed to meet his burden of demonstrating any legal error or that the court abused its discretion in the circumstances here.

Finally, we also note the appellate record is incomplete. The trial court admitted into evidence a mediator's evaluation of the children which apparently discussed their ties to their community and peers, and which mother also said reflected that their older son did not want to move. As far we can tell, that report (identified as Exhibit A) is not in the record. This too compels us to affirm the court's ruling, because it is father's burden to show error on the basis of a complete record of all the evidence that was before the court. (See, e.g., *Gonzalez v. Rebollo* (2014) 226 Cal.App.4th 969, 976-977 [rejecting husband's challenge to family court order where appellate record does not contain all evidence introduced below on child support issue].)

For all of these reasons, we conclude father has failed to meet his burden on appeal of demonstrating the trial court erred.

In her respondent's brief mother has requested an award of appellate sanctions in the amount of $20,000. We deny the request because it is improper to request sanctions in an appellate brief. A properly supported motion is required. (See *Saltonstall v. City of Sacramento* (2014) 231 Cal.App.4th 837, 858 [denying sanctions request].)

## DISPOSITION

The order denying father's April 26, 2019 move-away request is affirmed. Respondent shall recover her appellate costs.

11

_____

STEWART, J.

We concur.

_____

KLINE, P.J.

_____

MILLER, J.

*R.W. v. D.B.* (A157897)