Filed 12/11/24 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LCPFV, LLC, et al.,<br><br>        Plaintiffs and Appellants,<br><br>    v.<br><br>SOMATDARY INCORPORATED et al.,<br><br>        Defendants and Respondents. | B325599<br><br>Los Angeles County Super. Ct. No. 20STCV29408<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

Good cause appearing, the opinion in the above entitled matter, filed on November 13, 2024, is hereby modified as follows:

On page 2 of the opinion, the phrase "of $120,319.22" shall be deleted from the last sentence of the first paragraph.

In the second full paragraph on page 3 of the opinion, "$47,833.40" shall be replaced with "$47,883.40."

In the fourth full paragraph on page 3 of the opinion, "the LCPVF" shall be replaced with "this."

On page 6 of the opinion, the phrase "to the absent defendant Rapid" shall be removed from the last full paragraph.

On page 7 of the opinion, the sentence "The court's March 25 order striking Rapid's answer apparently LCPFV's prompted LCPFV's motion of March 29" shall be replaced with "The court's March 25 order striking Rapid's answer apparently prompted LCPFV's motion of March 29."

On page 8 of the opinion, the sentence "*This fact was not mentioned anywhere in plaintiff's motion to have [Rapid's] RFAs deemed admitted*" shall be replaced with "*This fact was not mentioned anywhere in plaintiff's motion to have [the] RFAs deemed admitted.*"

On page 9 of the opinion, the sentence "The court did not award the *$308,376.75 attorney fee* that the LCPFV requested" shall be replaced with "The court did not award the *$308,376.75 attorney fee* that LCPFV requested."

On page 14 of the opinion, the first full paragraph, which begins "For instance, defendants at the outset of the case…" and the immediately following two full paragraphs shall be deleted.

On page 16 of the opinion, "the following "facts."  As in *Universal* and *Pappas*, these requests went to the ultimate issues in the case.  (See *Universal, supra,* 51 Cal.App.5th at p. 128; *Pappas, supra,* 75 Cal.App.5th at pp. 978, 993, 994.)" shall be deleted and replaced with "facts" (retaining the quotation marks around "facts").

On page 19 of the opinion, the entire sentence "For the majority of the fight, there was only one fighter in the ring." shall be deleted.

On page 21 of the opinion, "the defense did not appear but the court *denied* LCPFV's motion because LCPFV's motion had

no purpose" shall be replaced with "the defense did not appear but the court *denied* LCPFV's motion because the motion had no purpose."

On page 22 of the opinion, "A sanctions order exceeds the bounds of reason when it was arbitrary, capricious, or whimsical" shall be replaced with "A sanctions order exceeds the bounds of reason when it is arbitrary, capricious, or whimsical."

In the second and third full paragraphs on page 24 of the opinion, "$47,833.40" shall be replaced with "$47,883.40."

In the second full paragraph on page 25 of the opinion, "$47,833.40" shall be replaced with "$47,883.40."

The petition for rehearing is denied.
[There is no change in the judgment.]

_____

STRATTON, P. J.　　　　GRIMES, J.　　　　WILEY, J.

3

Filed 11/13/24 (unmodified opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LCPFV, LLC, et al., | B325599 |
| Plaintiffs and Appellants, | Los Angeles County Super. Ct. No. 20STCV29408 |
| v. | |
| SOMATDARY INCORPORATED et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark V. Mooney, Judge.  Affirmed.

Harvey I. Stern; Benedon & Serlin, Kelly R. Horwitz and Gerald M. Serlin for Plaintiffs and Appellants.

No appearance for Defendants and Respondents.

————————————

Plaintiffs, do not try to turn your default judgment into a windfall.  This trial court properly served as the watchful gatekeeper.  We affirm.

Appellant LCPFV, LLC owned a warehouse with a rusty old sewer pipe.  When toilets backed up, LCPFV paid Rapid

Plumbing $47,883.40 to fix the problem. LCPFV had to get a second plumber to do the job right because Rapid's work was poor. Plumber two charged less than $47,883.40. Out of pocket for *$47,883.40*, LCPFV sued Rapid, which appeared but then defaulted. LCPFV submitted a default package for *$1,081,263.80*, which included an attorney fee request of $308,376.75 and a punitive damage demand of $500,000. The trial court rejected this outsized submission. It instead entered a default judgment of *$120,319.22*, which included attorney fees and everything else. This judgment of $120,319.22 was $960,944.58 less than LCPFV's demand but was generous in the context of this case.

LCPFV appeals its judgment as paltry. The trial court, however, was a dutiful gatekeeper. In the default judgment setting, the solitary party before the court may seek maximum gains without an opposing side to protest excesses. We applaud the trial court's vigilance.

The court also awarded $11,852.90 in sanctions in LCPFV's favor. LCPFV complains about these awards too, saying the court should have awarded *$123,086.40* in sanctions against the defaulted defendant: *$111,233.50* more than the trial court ordered. On this issue and all others, we affirm. Code citations are to the Code of Civil Procedure.

I

Attorney Joel Freeman was general counsel and the manager of LCPFV. The record does not show anyone else in this

2

company.  LCPVF's corporate address was the same as for Freeman's law firm.

LCPFV was leasing its warehouse to a tenant when the toilets backed up.  Freeman called Rapid Plumbing, or Rapid for short.  Rapid's corporate owner is Somatdary Inc.

Over the years, rust had eaten away at the cast iron sewer pipe set in the warehouse's concrete floor.  Sawing a 150-foot trench into concrete, replacing the pipe, and repouring would have been a major project.  Rapid proposed the alternative of a pipe sleeve.  Freeman agreed and paid Rapid $47,833.40 when Rapid finished. The contract included an attorney fee clause.

Dissatisfied with Rapid's performance, Freeman called a different plumber to redo all the work.  This other plumber charged $42,500, and temporary toilets cost another $1,577, for a total of $44,077, which LCPFV paid.

LCPFV sued Rapid and its employee Marco Lopez, who had supervised Rapid's work on the LCPFV job.  LCPFV later added Abbas Pournahavandi, the ostensible owner of Rapid, as the third defendant in the suit.

LCPFV put three attorneys on the case.  Harvey Stern and Mitchell Reed Sussman joined Freeman, who worked with Stern and Sussman as an active member of LCPFV's legal team.

The plumbing defendants briefly appeared, represented by counsel, and filed an answer.  LCPFV propounded discovery on Rapid, including "Set #1" of LCPFV's requests for 67 admissions. The plumbing defendants responded to this discovery.

All sides agreed on deadline extensions as the parties pursued a settlement.  Opposing counsel enjoyed professional and productive relations as they negotiated about a possible resolution.   Opposing lawyers conversed in collegial tones, for

instance, about the impending birth of defense counsel's child. Freeman wrote to defense counsel that "we have a good working relationship."

A settlement proved elusive, however, because the parties could not agree on terms.

The era of good feelings ended on July 6, 2021. Rapid's defense lawyer told Freeman the plumbing defendants, including Rapid, would not be participating in the case in the future and his defense firm would be seeking to withdraw from the matter.

After July 2021, the plumbing defendants never came to court and filed no more pleadings with the court, except for one purported substitution of counsel naming Pournahavandi as Rapid's legal representative. The court struck this filing because a corporation cannot represent itself, and Pournahavandi was not a lawyer.

Rather than economically move the matter to a speedy default judgment, however, LCPFV at this point ramped up its legal activity and began asking the court for many large sanctions against the absent Rapid.

After Rapid announced it would no longer participate in the case, LCPFV filed some *15* discovery and other motions. It filed an additional *eight* "reply" briefs, despite the fact Rapid filed no opposition papers. LCPFV thus filed nearly two dozen pleadings, *after* it was on notice the defendants would not participate in the case.

LCPFV's added pleadings each requested sanctions in amounts varying from $1,652.85 to $43,670.00. The total sum of LCPFV's requested sanctions exceeded $100,000.00.

LCPFV has included only one transcript in the record. That motion hearing was on January 4, 2022. In line with its

4

announcement of non-participation, Rapid did not appear at this hearing.

LCPFV sent *both* Freeman and Stern to this hearing. The court heard two of LCPFV's many motions.

One motion was to compel further discovery responses. Freeman previously told the defense each discovery motion would require "at least 4 hours" to prepare. LCPFV now sought sanctions of "at least $43,980."

The trial court granted LCPFV's unopposed motion and awarded $2,000 in sanctions.

Given that LCPFV had asked the court for "at least *$43,980*" in sanctions but the court awarded only *$2,000*, the transcript shows the following exchange, to which we add italics.

"Mr. Freeman: Your Honor, can we get *some rationale as to the amount of the sanctions*?" […]

"The Court: Well, the rationale is counsel is only entitled to reasonable attorney's fees. This is a situation where it's a motion to compel further responses. It's pretty straightforward. 'This is what we asked for, this is what we got back. They aren't all code-compliant.' It's really – it should be an hour to do this type of motion, but *I'm giving you four hours or so*. So it's pretty straightforward in terms of what reasonable attorney's fees are on *a very basic discovery motion*."

"Mr. Freeman: Okay, your Honor. That's fine."

In short, the court pinpointed the four-hour estimate for motion preparation Freeman previously gave opposing counsel. Freeman acceded.

The other matter in that hearing was LCPFV's motion to compel further responses to 67 requests for admissions. While

still represented by counsel, Rapid had responded to each request with "admit" or "deny" but had included objections in its answers.

The trial court denied this motion, describing it as "an unnecessary motion.  It serves no purpose."  Rapid had responded to each request with either "admit" or "deny," and LCPFV was entitled to no more.  LCPFV has not appealed this ruling.

Thereafter, on February 17, 2022, on behalf of LCPFV, Freeman declared 97 additional requests for admissions were necessary because of the "complexity" or "quantity" of the issues in the case.  LCPFV previously had posed 67 requests to the absent defendant Rapid; LCPFV now posed another 97.  These 97 requests, issued at a time when LCPFV was on notice that Rapid would be *unable* to answer, will become significant, as we shall explain.

On Friday, March 25, 2022, the court struck Rapid's answer.  (See § 2023.030, subd. (d)(1) [court may strike the pleadings of a party engaging in the misuse of the discovery process].)

Two working days later—on Tuesday, March 29, 2022—LCPFV filed a motion to have its 97 requests for admission deemed admitted because the absent Rapid had not responded.

The court's March 25 order striking Rapid's answer apparently LCPFV's prompted LCPFV's motion of March 29.  Yet LCPFV's March 29 motion omitted all mention of the March 25

6

order, despite its temporal proximity.  This omission will gain significance, as will appear.

Rapid remained out of the case and did not oppose the March 29 motion, which the court granted on May 2, 2022.

LCPFV obtained entry of default and filed a default judgment package asking for *$1,081,263.80*.

The court wrote a concise four-page single-spaced explanation of why it was *not* awarding $1,081,263.80 but was awarding *$120,319.22* instead.

The trial court summarized the case.  "According to the allegations of the complaint, defendant performed plumbing work for plaintiff to repair backed up toilets at a commercial building.  This work was completed in June 2017.  In January 2019, the toilets were again backing up.  Plaintiff hired another company to repair the work performed by defendant."

The court underlined the vital role of the trial judge in policing default packages.  The trial court wrote the following:

"In a default case the judge's duty in connection with the default process is 'to act as a gatekeeper, ensuring that only the appropriate claims get through.'  *Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1000.  The judge must take time to analyze the complaint to ensure that it supports the judgment that plaintiff is seeking and to determine whether the evidence . . . supports the requested damages.  *Kim v. Westmoore* (2011) 201 Cal.App.4th 267, 272.  With those admonitions in mind, the court has reviewed the allegations as set forth in the first amended

complaint, as well as the declarations submitted in support of plaintiff's request for a default judgment."

The court examined LCPFV's proposed use of requests for admissions. In the excerpt we quote in the next paragraph, the trial court lamented LCPFV's lack of candor. The italics are ours.

"In terms of submitted evidence, the court notes that plaintiff places some reliance on Request for Admissions that had been propounded upon defendant [Rapid] and deemed admitted by the court on May 2, 2022. The RFA were served at a time when [Rapid] was not represented by counsel. A further review of the court file reflects that the motion to have those RFAs deemed admitted was filed by plaintiff four days after the answer of [Rapid] had been stricken. *This fact was not mentioned anywhere in plaintiff's motion to have [Rapid's] RFAs deemed admitted. The court finds this lack of candor to be disappointing (to say the least). The court finds no evidentiary value on request for admissions obtained in such a manner*."

The trial court awarded $91,960.40 on the breach of contract claim. This amount was the sum of the $47,883.40 LCPFV paid Rapid and the $44,077 to fix Rapid's defective work.

The court rejected LCPFV's fraud claim for damages. "Plaintiff has not established that it is entitled to damages on its fraud claim. This case is essentially a 'garden-variety' breach of contract claim. Defendant was hired to perform plumbing work to repair toilets that were backing up. A year and a half later it was determined that defendant did not do the work for which they had been contracted."

The court wrote that the pleading and evidence did "not support that defendant Lopez's statements were made with malice, oppression or fraud, or that he was an officer, director, or

8

managing agent of defendant [Rapid]. In keeping in its role as gatekeeper, the court does not find the fraud and punitive damage claims appropriate against defendant Lopez or defendant [Rapid]."

The court also rejected the default judgment against Pournahavandi, the alleged owner of Rapid. "The court declines to issue a separate judgment against defendant Abbas Pournahavandi based upon the fifth cause of action for alter ego. A claim based upon an alter ego theory is not itself a claim for substantive relief. It is a procedural device by which courts will disregard the corporate entity in order to hold the alter ego individual liable on the obligations of the corporation. . . . To recover under a theory of alter ego liability plaintiff also would have to show an inequitable result if Pournahavandi and the corporation are not treated as one and the same. This has not been alleged or established."

The court did not award the *$308,376.75 attorney fee* that the LCPFV requested. The italics are ours:

"This sum appears excessive. As stated above, this is basically a breach of contract case. Defendant didn't do the work they were hired to do. [¶] Throughout most of the case, defendants were unrepresented by counsel. *Generating over $300,000 for attorney's fees pursuing a simple breach of contract claim against unrepresented litigants is simply not reasonable.* The court further notes that the primary defendant, [Rapid], could not legally respond to any of plaintiff's discovery, or discovery motions. A corporation cannot represent itself but can only do so through an attorney. *It can hardly be said that this case was 'hotly litigated.' The reality is, there simply was no one on the other side to litigate against. . . .* [The c]ourt finds that

plaintiff has not adequately established that the services were 'extraordinary.' Indeed, virtually all of the motions filed in this case were filed by plaintiff after defense counsel's motion to be relieved was first filed."

From the time the defendants ceased to appear, LCPFV filed more than 20 pleadings with the trial court, each demanding a different sanctions sum. In total, LCPVF demanded well over $100,000.00 in sanctions. The trial court awarded $11,852.90 in sanctions on motions to compel.

## II

LCPFV appeals on four issues: (1) requests for admissions, (2) attorney fees, (3) sanctions, and (4) prejudgment interest. We treat these issues in turn.

## A

The trial court was well within its discretion to reject the deemed requests for admission as supposed "proof" of fraud in LCPFV's default judgment package.

### 1

The pertinent law draws from two fields.

#### a

The first field is the law of default judgments.

Litigation over default judgments can depart from the adversarial norm of the American legal system. Once defendants have defaulted, the defense is out of the case. Only the other side remains active before the court. (See generally Weil & Brown,

10

Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2024) ¶ 5:1 et seq. (*Rutter*).)

With the defense in enforced inactivity, the task is to end the case appropriately with a one-sided presentation. Special rules apply.

In this situation, it is not in plaintiffs' tactical interest to be conservative in their demands, because no opposing party will point out excesses. (*Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1013 (*Grappo*).)

Plaintiffs' attorneys thus may assume a defendant's default is "an unalloyed gift: an opportunity to obtain a big judgment with no significant effort." (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 271 (*Westmoore*).) As *Westmoore* emphasized, however, it is "incumbent upon the plaintiff to *prove up* his damages, with actual evidence." (*Id.* at p. 272, italics in original.)

Likewise, it is incumbent upon the trial court carefully to inspect the plaintiff's default package. Courts must not passively accept whatever the plaintiff requests. " 'The court shall hear the evidence offered by the plaintiff, and shall render judgment in the plaintiff's favor for that relief […] '*as appears by the evidence to be just.*' " (*Westmoore, supra,* 201 Cal.App.4th at p. 287, quoting Code Civ. Proc., § 585, subd. (b), original italics; see also *Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 868 (*Heidary*) [same].)

In *Westmoore* and again in *Heidary*, the esteemed Justice Bedsworth underlined the vital role of justice the Legislature put

11

in the governing statute.  Justice, then, is the axle around which the wheel of default judgments is to rotate.

Quoting *Heidary* with approval, our Supreme Court endorsed the point that, in default situations, trial courts must act as gatekeepers to ensure only the appropriate claims get through.  (*Sass v. Cohen* (2020) 10 Cal.5th 861, 889 n.13.)

"It is imperative in a default case that the trial court take the time to analyze the complaint at issue and ensure that the judgment sought is not in excess of or inconsistent with it." (*Heidary, supra,* 99 Cal.App.4th at p. 868.)

When determining if the evidence at the prove-up hearing supports the requested damages, the court's role is serious, substantive, and often complicated.  (*Westmoore, supra*, 201 Cal.App.4th at pp. 272–273.)  However burdened they may be, trial courts must attend to this duty.  (*Grappo, supra,* 11 Cal.App.5th at p. 1000.)

In sum, the gatekeeper doctrine demands the full powers of the trial judge at the default judgment stage.

b

The second legal field concerns requests for admissions.

A party may propound a request for the admission of "the truth of specified matters of fact, opinion relating to fact, or application of law to fact."  (§ 2033.010.)  Requests for admissions mainly aim to settle a triable issue so it will not have to be tried. If the party is able to make the admission, the time for making it is during discovery and not at trial.  If the requester proves the truth of a request denied by the other party, the requester can, under section 2033.420, move for payment of the reasonable expenses of making that proof, including attorney fees.  (*Spahn v. Richards* (2021) 72 Cal.App.5th 208, 216; see *Universal Home*

12

*Improvement, Inc. v. Robertson* (2020) 51 Cal.App.5th 116, 129–132 (*Universal*).)

The instrument of requests for admissions is unique among discovery tools.  Most discovery tools, like interrogatories, depositions, and document demands, are designed to uncover factual information.  That, however, is not true of requests for admissions; their "main purpose is to set issues at rest by compelling admission of things that cannot reasonably be controverted."  (*Rutter, supra*, ¶ 8:1256.)

Nonetheless, as a practical matter, "the *important* facts in a case are usually legitimately disputed" and cannot be resolved by requests for admissions.  (*Rutter, supra*, ¶ 8:1259.)  As a result, requests for admissions are useful "only as to matters of lesser importance (for which they may not be necessary, since unimportant matters can usually be handled by stipulation with opposing counsel)."  (*Ibid.*)

Judicial discretion guides the use of requests for admissions.  (*Universal, supra,* 51 Cal.App.5th at p. 130.)  This discretion " 'is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown.' "  (*Ibid.*, quoting 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 358, pp. 406–407; see *Bailey v. Taaffe* (1866) 29 Cal. 422, 424.)

A trial court must judge whether use of a request for admissions is in conformity with the spirit of the law and serves substantial justice.  (*Universal, supra,* 51 Cal.App.5th at p. 130.)  When a court is "troubled" by the way a party has used requests for admission, the court may take corrective action.  (*Ibid.*;

13

accord, *Pappas v. Chang* (2022) 75 Cal.App.5th 975, 994 (*Pappas*).)

For instance, defendants at the outset of the case in *Universal* propounded requests that went to the ultimate issue in the case. (*Universal, supra,* 51 Cal.App.5th at p. 128.) The defense won at trial and moved for attorney fees as costs of proof at trial. (See § 2033.420, subd. (a).) The trial court granted this motion and awarded the defense costs of proof. (*Universal, supra,* 51 Cal.App.5th at p. 129.)

The *Universal* opinion reversed this order on the ground that the requests "essentially asked plaintiffs to admit that they had no claim . . . ." (*Universal, supra,* 51 Cal.App.5th at p. 129.) "We conclude that the costs of proof award here is not 'in conformity with the spirit of the law'—it does not 'subserve ... substantial justice.' " (*Id.* at p. 130.)

"Frankly, we are troubled that a defendant can at the very inception of litigation, at a time when, as best we can tell, no discovery had taken place, and certainly no deposition, serve RFAs essentially seeking responses admitting that plaintiff had no case, and then, if plaintiff ultimately proves unsuccessful, recover costs of proof attorney fees, as here. This, it could be said, is tantamount to a form of strict liability: make a claim; deny an early-served RFA that the claim has no merit; vigorously pursue the claim; lose the claim; and pay. That cannot be the

14

law." (*Universal, supra,* 51 Cal.App.5th at pp. 130–131; accord, *Pappas, supra,* 75 Cal.App.5th at p. 994.)

We review this issue for an abuse of discretion. (*Universal, supra,* 51 Cal.App.5th at p. 130.)

2

The trial court properly rejected LCPFV's use of requests for admissions in this default judgment context. The court evaluated LCPFV's default judgment package and found "no evidentiary value" in "admissions obtained in such a manner." This was an appropriate exercise of the trial court's gatekeeping function. (Cf. *Sass v. Cohen, supra,* 10 Cal.5th at p. 889, fn.13 [trial courts must act as gatekeepers to ensure only appropriate claims get through].)

a

The record amply supports the trial court's exercise of discretion.

To recap, LCPFV originally propounded requests for admission against Rapid. Represented by counsel at the time, Rapid responded on January 14, 2021. LCPFV nonetheless brought a motion to compel further responses.

Over a year later, on February 17, 2022, LCPFV filed an attorney declaration asserting the need to propound more than the 35 requests for admissions allowed by section 2033.030 of the Code of Civil Procedure. The attorney already had propounded 67 requests for admission on Rapid. He now swore LCPFV needed 97 *more* requests because of "the complexity or the quantity of the existing and potential issues" in the case against Rapid.

The content of these 97 requests revealed LCPFV's tactic. Knowing Rapid could not and would not respond, LCPFV asked

15

Rapid to admit the following "facts." As in *Universal* and *Pappas*, these requests went to the ultimate issues in the case. (See *Universal, supra,* 51 Cal.App.5th at p. 128; *Pappas, supra*, 75 Cal.App.5th at pp. 978, 993, 994.)

We summarize some of LCPFV's 97 proposed "facts."

- When Rapid entered the contract, it "never intended" to do the job it promised.
- Rapid "knew" its work on the LCPFV violated safety codes and endangered the public.
- Rapid's "pattern and practice of willfully performing work without the required building and safety permits has repeatedly endangered the health and safety of the public."
- Rapid "has a pattern and practice of willfully failing to comply with building law."
- LCPFV is "entitled to recover exemplary damages" against Rapid.

On appeal, LCPFV has not attempted to defend the plausibility of these "admissions." LCPFV has not explained why, for instance, a plumber would agree to a job when it "never intended" to do the work.

This sample shows LCPFV had decided, not to seek to narrow the field of legitimate controversy for trial, but to use Rapid's default status to manufacture a *fraud* case for which there was no other proof. The goal of the fraud count was to gain access to punitive damages, which LCPFV said should be $500,000: 10 times the sum truly at issue in the case. LCPFV was simply piling on.

The trial court studied the case file and exercised its discretion to combat this maneuver. The trial court properly

16

exercised its discretion when it "refused to condone such tactics." (*Pappas, supra,* 75 Cal.App.5th at p. 994.)

b

We reject LCPFV's three attacks on the trial court's order.

i

LCPFV first protests the trial court's ruling deprived it of the due process of law guaranteed by the Constitution. In its brief to us, LCPFV's constitutional argument is insubstantial, consisting of citation to only two precedents. Neither is relevant. *Calvert v. County of Yuba* (2006) 145 Cal.App.4th 613, 617 held that, if an entity claims a vested contract right to conduct a surface mining operation that is subject to the diminishing asset doctrine, that claim must be determined in a public adjudicatory hearing that meets procedural due process requirements. *In re Claudia S.* (2005) 131 Cal.App.4th 236, 241 concerned a mother who took her minor children to Mexico knowing that an agency planned to file juvenile dependency petitions on their behalf based on their exposure to domestic violence. These holdings are not germane to this default judgment case.

Due process requires notice and an opportunity to be heard. LCPFV had both. It simply disagreed with the court's ruling, which properly occasioned an appeal but did not create a constitutional issue.

ii

As a second wave of attack, LCPFV challenges the trial court's legal authority for its ruling. The trial court cited the *Grappo* and *Kim v. Westmoore* precedents about the gatekeeper doctrine. LCPFV, however, fails to cite or discuss *Grappo* in its brief to us. LCPFV does cite *Kim v. Westmoore*, but only twice, and in passing. LCPFV's first citation of *Kim v. Westmoore*

17

supports the point that a "plaintiff must prove entitlement to punitive damages with evidence."  This *supports* the trial court's work.  The second citation reinforces the rule of subdivision (c) of section 3295 of the Civil Code, which requires a court order before plaintiffs can take pretrial discovery of defendants' profits or financial condition.  This is not pertinent.

LCPFV's citations do not address the gatekeeper doctrine, which requires trial courts carefully to scrutinize default judgment packages to ensure only appropriate requests get through.  This omission does not demonstrate trial court error.

iii

Third, LCPFV argues the "admitted" facts constitute fraud, which entitled LCPFV to punitive damages.  The trial court correctly refused to accept LCPFV's contrivances as a valid basis for this default judgment or for punitive damages.  Given that ruling, there *were* no admitted facts.  The fraud count lacked a factual basis, as did the demand for $500,000.00 in punitive damages.  The trial court was right to block LCPFV's effort to turn its default judgment into a windfall.

B

The trial court awarded LCPFV $4,948.46 in attorney fees for a case in which the company was out of pocket $47,883.40. LCPFV sought an award of $308,376.75 in fees, and seeks this award on appeal.  The court's fee award was proper.

1

An experienced trial judge is in the best position to evaluate the value of professional services rendered in the trial court.  (*Snoeck v. ExakTime Innovations, Inc.* (2023) 96 Cal.App.5th 908, 921 (*Snoeck*).)  Trial judges of experience, like

18

this one, regularly see fee applications and develop a current and data-based sense of what is customary and reasonable.

We owe considerable deference to trial court decisionmaking about attorney fee awards. We thus review for an abuse of discretion. We presume the fee approved by the trial court is reasonable and the court considered all factors in reaching its decision, even though the court may not have mentioned them in a written ruling. The trial court is not required to state each charge it finds reasonable or unreasonable, nor is it required to issue a statement of decision with regard to a fee award. (*Snoeck, supra*, 96 Cal.App.5th at pp. 920–921.)

We will not disturb the trial court's judgment unless it is clearly wrong. We have no authority to disturb the trial court's factual findings if they are supported by substantial evidence. The burden is on the objector to show error. (*Snoeck, supra*, 96 Cal.App.5th at pp. 920–921.)

A trial court may not merely rubberstamp a request for attorney fees. Relevant factors to consider include, among others, the novelty and difficulty of the issues presented, the skill demonstrated in litigating them, and the contingent nature of the fee award. (*Snoeck, supra*, 96 Cal.App.5th at pp. 920–921.)

2

The fee award in this case was proper. Five factors support the trial court's decision.

First, for most of the case there was no one on the other side. The trial court stressed this fact. For the majority of the fight, there was only one fighter in the ring. The effort needed to defeat a no-show is slight.

Second, LCPFV put three lawyers and a paralegal on the case. Freeman, Stern, and Sussman billed on this matter. Their

19

charges include communicating with each other.  This is duplicative.  At one hearing, *no* defense lawyer appeared, but the *two* LCPFV lawyers who attended still lost a motion.  Redundancy is inefficient and, apparently, also was ineffective.

Third, the issues were simple:  did Rapid do a good plumbing job?  When the toilets backed up—again—after Rapid said it had fixed everything, that was a powerful sign Rapid's work had not been excellent.  The repair bill was less than Rapid had charged, so the battle on that score promised to be straightforward.  This case was not challenging.

Fourth, the trial court chastised LCPFV's counsel for their lack of candor, as noted.  Candor to the court is a crucial element of attorney professionalism.  Excellent lawyers are completely straight with the court.  Departures from professionalism are a basis for reducing fee awards.  (Cf. *Snoeck, supra*, 96 Cal.App.5th at pp. 921–933 [civility is an element of professionalism, and incivility is a proper basis for a fee reduction].)

Fifth was simply the enormously inflated size of the claimed bill on this simple case.  Asking for a shocking sum on an elementary case can backfire badly.  A general observation that attorneys overlitigated a case can fully justify a reduced award.  An unreasonably inflated fee request permits the trial court to reduce the award or *to deny one altogether*.  (*Snoeck, supra*, 96 Cal.App.5th at pp. 920, 921.)

In short, this fee reduction was proper.

LCPFV strenuously objects to the trial court's decision to deny the $308,376.75 fee demand.

LCPFV first argues it did a lot of work because it filed a lot of motions.  The trial court aptly noted that "virtually all of the motions filed in this case were filed by plaintiff after defense

20

counsel's motion to be relieved was first filed." At a hearing on one motion, the defense did not appear but the court *denied* LCPFV's motion because LCPFV's motion had no purpose. LCPFV thus had filed a pointless motion, fielded two attorneys for the hearing, encountered no opposition, and *still* lost. Overstaffing and over-litigating a case is a good reason to reduce a fee request.

LCPFV protests it devoted *739* hours of legal effort to this matter. We share the trial court's reaction: "Throughout most of the case, defendants were unrepresented by counsel. Generating over $300,000 for attorney's fees pursuing a simple breach of contract claim against unrepresented litigants is simply not reasonable."

LCPFV faults the trial court for consulting the local court rule setting fee awards for default judgment cases, and argues this passing reference was an error of law. LCPFV asserts "the trial court failed to exercise its discretion." This is incorrect. The trial court did exercise its discretion, carefully, and its reference to a fee schedule was not a statement, expressed or implied, that the fee schedule controlled its decisionmaking as a matter of law. It was no abuse of discretion for the court to note a court rule as one factor among many when evaluating a fee request.

LCPFV claims that it shocks the conscience for a court to have awarded *less than two percent* of its fee request. This logic-by-percentage is pernicious. The bigger the bloat, the smaller the

21

percentage.  The shocking aspect of this situation was not the trial court award, which was the product of reasonable discretion.

LCPFV writes about Rapid's "aggressive litigation tactics." Mostly what Rapid did in this case was nothing.

LCPFV makes an array of other insubstantial claims, but the trial court was right to deflate the $308,376.75 fee request to a reasonable size.

## C

LCPFV contends the trial court should have awarded it more sanctions against Rapid.  After Rapid's lawyer told LCPFV he was withdrawing his representation and Rapid would no longer participate in the litigation, LCPFV filed more than 20 pleadings with the trial court, including eight "reply" briefs on motions where Rapid had filed no opposition.  Each LCPFV filing demanded a different sanctions sum, for a total demand well in excess of $100,000.00.  The trial court awarded more than $11,000 in sanctions.  LCPFV protests that the trial court erroneously denied sanctions to which LCPFV was entitled.

We review discovery sanction orders for abuse of discretion, viewing the entire record in the light favorable to the ruling, and drawing reasonable inferences in its support.  We reverse the court's decision only for manifest abuse exceeding the bounds of reason.  A sanctions order exceeds the bounds of reason when it was arbitrary, capricious, or whimsical.  (*Victor Valley Union High School District v. Superior Court* (2023) 91 Cal.App.5th 1121, 1137.)  We affirm a denial of a motion for monetary sanctions if it is correct on any theory, even if the trial court's

22

reasoning was erroneous.  (*Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 78 (*Kwan*).)

The basic purpose of discovery sanctions is to compel disclosure of discoverable information.  (*Rutledge v. Hewlett–Packard Co.* (2015) 238 Cal.App.4th 1164, 1193 (*Rutledge*).)  Discovery sanctions perform a vital role in case management, for their existence creates a strong incentive for parties to comply with their discovery obligations, which aids the discovery of truth and promotes justice.

Sanctions may not be imposed, however, solely to punish the offending party.  (*Rutledge, supra,* 238 Cal.App.4th at p. 1193.)

When a defendant announces it is no longer participating in the litigation, and the case is proceeding to a default judgment, a trial judge properly may decide that sanctions no longer function as an incentive to get discoverable information and now would amount only to impermissible punishment.

This fundamental principle justified the trial court's exercise of its discretion in this case.  The principle applies to subdivision (a)(1) of section 2023.050, which LCPFV cites.  The fact the trial court offered other rationales for its rulings does not affect this analysis.

LCPFV cites *Kwan*, but that precedent did not involve a defendant that had ceased defending a case.  (*Kwan, supra*, 58 Cal.App.5th at pp. 62–72.)  *Kwan* is not on point.

LCPFV also cites section 2023.020, which with our emphasis provides that, "[n]otwithstanding the outcome of the particular discovery motion, the court shall impose a monetary sanction ordering that any party or attorney who *fails to confer as required* pay the reasonable expenses, including attorney's fees,

23

incurred by anyone as a result of that conduct." This section has no application where a defendant cannot "*confer*" because it is out of the case.

After LCPVF was on notice Rapid had fired its counsel and would no longer participate in the case, the proper task was to move efficiently to a default judgment, not to begin blasting out a barrage of law and motion work against a missing opponent. When there were no opposition papers, for instance, filing eight "reply" briefs was unnecessary. The trial court had ample grounds for concluding further sanctions awards would encourage inapt conduct and would be "unjust." (§ 2023.030, subd. (a).)

### D

LCPFV seeks prejudgment interest from the date of its payment of $47,833.40 to Rapid, which was June 22, 2017. The trial court awarded prejudgment interest from the date LCPFV filed suit, which was August 4, 2020. The trial court was right.

The issue here is whether the $47,833.40 payment was a measure of damages that was "certain, or capable of being made certain by calculation . . . ." (See Civ. Code, § 3287, subd. (a).)

Damages are unascertainable if their amount depends on disputed facts or if the available factual information is insufficient to determine the amount. The test is whether the defendant actually knew the amount owed or, from reasonably available information, could have computed that sum.

24

(*Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1316.)

We independently review this question of law. (*Employers Mutual Casualty Co. v. Philadelphia Indemnity Ins. Co.* (2008) 169 Cal.App.4th 340, 347.)

Prejudgment interest was not available in this case. LCPFV paid Rapid $47,833.40 on June 22, 2017. On that date, it was *highly* uncertain whether Rapid owed LCPFV the entire sum LCPFV had just paid Rapid. Perhaps some, or most, or all of Rapid's plumbing work was good and would stand the test of time. Would the *entire* job need to be redone? In whose opinion? Did Rapid's labors make the second job easier? Would some intervening or superseding cause, like LCPFV's lack of maintenance or misuse of the sewer line, contribute to a recurrence of plumbing problems? And so on.

As a matter of law, factual uncertainties of this kind precluded prejudgment interest from June 22, 2017.

## DISPOSITION

We affirm the judgment. The appellants are to bear their own costs.

WILEY, J.

We concur:


STRATTON, P. J.



GRIMES, J.


25